1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Vince Chhabria, District Judge

4

5   PACIFIC COAST FEDERATION OF   )
    FISHERMEN'S ASSOCIATION       )
6   ASSOCIATION, INC.,            )
                                  )
7            Plaintiff,           )
                                  )
8   vs.                           )   No. C 18-07477-VC
                                  )
9   CHEVRON CORP., et al.,        )
                                  )
10           Defendants.          )
    _____)

11

12                              San Francisco, California
                                Friday, May 26, 2023
13
           TRANSCRIPT OF THE OFFICIAL ELECTRONIC
14    SOUND RECORDING  10:05 - 10:26 = 21 MINUTES

15  APPEARANCES:

16  For Plaintiff:
                                Sher Edling, LLP
17                              100 Montgomery Street
                                Suite 1410
18                              San Francisco, California
                                 94104
19                       BY:  KATIE H. JONES, ESQ.
                                VICTOR SHER, ESQ.
20
    For Chevron:
21                              Gibson Dunn, LLP
                                555 Mission Street
22                              San Francisco, California
                                 94105
23                       BY:  JOSHUA DICK, ESQ.
                                THEODORE BOUTROUS, JR., ESQ.
24
              (APPEARANCES CONTINUED ON THE NEXT PAGE.)
25

2

```
 1  APPEARANCES:   (Cont'd.)

 2  For ExxonMobil:
                            O'Melveny & Myers, LLP
 3                          400 Hope Street, 18th Floor
                            Los Angeles, California 90071
 4                     BY:  DAWN SESTITO, ESQ.

 5  For ConocoPhillips:
                            Reed Smith, LLP
 6                          101 2nd Street, Suite 1800
                            San Francisco, California
 7                             94105
                       BY:  RAYMOND A. CARDOZO, ESQ.
 8
    For BP:
 9                          Arnold & Porter
                            777 South Figueroa Street
10                          44th Floor
                            Los Angeles, California 90017
11                     BY:  JOHN D. LOMBARDO, ESQ.

12  For TotalEnergies:
                            Kirkland & Ellis, LLP
13                          555 California Street
                            Suite 2700
14                          San Francisco, California
                               94104
15                     BY:  CHRISTOPHER W. KEEGAN, ESQ.
                            ALLY ARIAS, ESQ.
16
    For Apache Corporation:
17                          Vinson & Elkins, LLP
                            555 Mission Street, Suite 2000
18                          San Francisco, California
                               94105
19                     BY:  MORTIMER H. HARTWELL, ESQ.
                            PAT MIZELL, ESQ.
20                          STEPHANIE NOBEL, ESQ.

21  For Phillips 66:
                            Latham & Watkins, LLP
22                          505 Montgomery Street
                            Suite 2000
23                          San Francisco, California
                               94111
24                     BY:  NICOLE C. VALCO, ESQ.

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

3

APPEARANCES:   (Cont'd.)

For Eni Oil and Gas:
                                White & Case
                                609 Main Street, Suite 2900
                                Houston, Texas 77002
                          BY:   BRYAN MERRYMAN, ESQ.

For Marathon Oil:
                                Orrick, Herrington &
                                  Sutcliffe, LLP
                                405 Howard Street
                                San Francisco, California
                                  94105
                          BY:   CATHERINE Y. LUI, ESQ.

For Shell:
                                Kellogg, Hansen, Todd, Figel
                                  & Frederick, LLP
                                1615 M Street, NW, Suite 400
                                Washington, DC 20036
                          BY:   DANIEL SEVERSON, ESQ.

For Anadarko &
  Occidental:
                                Barg, Coffin, Lewis &
                                  Trapp, LLP
                                600 Montgomery Street
                                Suite 525
                                San Francisco, California
                                  94111
                          BY:   R. MORGAN GILHULY, ESQ.

For Repsol & Hess:
                                Baker Botts
                                910 Louisiana Street
                                Houston, Texas 77002
                          BY:   J. SCOTT JANOE, ESQ.
                                MEGAN BERGE, ESQ.




                (APPEARANCES CONTINUED ON THE NEXT PAGE.)

4

APPEARANCES:  (Cont'd.)

For Marathon Petroleum
  Corporation:                    Hunton, Andrews, Kurth, LLP
                                  50 California Street
                                  Suite 1700
                                  San Francisco, California
                                    94111
                            BY:   SHANNON S. BROOME, ESQ.
                                  SHAWN REGAN, ESQ.

For Ovintiv Canada ULC:
                            BY:   MICHAEL FOX, ESQ.

For Shell:
                                  Lafayette & Kumagai
                                  1300 Clay Street, Suite 810
                                  Oakland, California 94612
                            BY:   GARY T. LAFAYETTE, ESQ.


Transcribed by:                   Echo Reporting, Inc.
                                  Contracted Court Reporter/
                                  Transcriber
                                  echoreporting@yahoo.com

5

1  <u>Friday, May 26, 2023</u>                                <u>10:05 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4           THE CLERK:  Now calling civil case 18-7477,

5  Pacific Coast Federation of Fishermen's Association, Inc.,

6  versus Chevron Corp, et al.

7       Will Counsel please state your appearances for the

8  record, starting with the Plaintiff?

9           MS. JONES (via Zoom):  Good morning, Katie Jones

10 of Sher Edling for the Plaintiff.

11          THE COURT:  Hi.

12          MR. DICK (via Zoom):  Good morning --

13          MR. SHER (via Zoom):  Your Honor, Vic Sher for the

14 Plaintiff.

15          THE COURT:  Hi.

16          MR. DICK:  Good morning, your Honor.  This is

17 Joshua Dick from Gibson Dunn.  With me is my partner,

18 Theodore Boutrous on behalf of the Chevron Defendants, whom

19 we plan to take the lead on speaking for the Defendants, at

20 this conference.

21          THE COURT:  Hi.

22          MR. BOUTROUS (via Zoom):  Good morning, your

23 Honor.

24          THE COURT:  Morning.

25          MS. SESTITO (via Zoom):  Good morning, your Honor.

6

1    Dawn Sestito for ExxonMobil Corporation and ExxonMobil Oil

2    Corporation.

3              THE COURT:  Howdy.

4              MR. CARDOZO (via Zoom):  Good morning.  Ray

5    Cardozo for ConocoPhillips.

6              THE COURT:  Hi Mr. Cardozo.

7              MR. LOMBARDO (via Zoom):  Good morning, your

8    Honor.  John Lombardo with Arnold and Porter on behalf of

9    the BP Defendants.

10             THE COURT:  Hello.

11             MR. KEEGAN (via Zoom):  Good morning, your Honor.

12   Chris Keegan, and with me my colleague, Ally Arias, on

13   behalf of TotalEnergies E&P, USA and TotalEnergies

14   Marketing, USA.

15             THE COURT:  Hi.

16             MR. HARTWELL (via Zoom):  Good morning, your

17   Honor.  This is Mort Hartwell, I'm with Pat Mizell and

18   Stephanie Nobel for Apache Corporation.

19             THE COURT:  Hello.

20             MS. VALCO (via Zoom):  Good morning, your Honor.

21   This is Nicole Valco of Latham and Watkins on behalf of

22   Phillips 66.

23             THE COURT:  Hi.

24         Is that everyone?

25             MR. MERRYMAN (via Zoom):  Good morning, your

7

1  Honor.  Bryan Merryman of White and Case on behalf of

2  Defendant, Eni Oil and Gas.

3          MS. LUI (via Zoom):  Good morning, your Honor.

4  Catherine Lui, Orrick, Herrington and Sutcliffe on behalf of

5  Defendants, Marathon Oil Corporation and Marathon Oil

6  Company.

7          THE COURT:  Hi.

8          MR. SEVERSON (via Zoom):  Good morning, your

9  Honor.  This is Daniel Severson on behalf of Shell PLC and

10 Shell Oil Products Company, LLC.

11         THE COURT:  Hello.

12         MR. GILHULY (via Zoom):  Good morning, your Honor.

13 Morgan Gilhuly of Barg, Coffin, Lewis and Trap for Anadarko

14 Petroleum, Occidental Petroleum and Occidental Chemical.

15         THE COURT:  Hi.

16         MR. JANOE (via Zoom):  Good morning, your Honor --

17         MS. BROOME (via Zoom):  Good morning -- go ahead,

18 Scott.

19         MR. JANOE:  Scott Janoe with Baker Botts.  With me

20 is my partner, Megan Berge also of Baker Botts.  We are here

21 on behalf of Repsol S.A., Repsol Energy North America Corp.

22 and Hess Corporation.

23         THE COURT:  Hi.

24         MS. BROOME:  Good morning, your Honor.  Shannon

25 Broome with -- on behalf of Marathon Petroleum Corporation

8

1  with Hunton Andrews Kurth, and with me is my colleague,

2  Shawn Regan.

3          THE COURT:  Hi.

4          MR. FOX (via Zoom):  Good morning, your Honor.

5  Michael Fox on behalf of Ovintiv Canada ULC, and I also have

6  four of our summer interns with -- behind me and Michael

7  Healy of Shook, Hardy and Bacon is also on the line

8  representing Ovintiv.

9          THE COURT:  Hi everyone.

10         MR. LAFAYETTE (via Zoom):  Good morning, your

11  Honor.  Gary Lafayette, Lafayette and Kumagai on behalf of

12  Shell PLC and Shell Oil Products.

13         THE COURT:  Hello.

14     All right, is that it?

15     (No response.)

16         THE COURT:  Okay.  I'm sorry, I guess I've been a

17  judge for too long.  I mean, I -- what happened is, I got

18  the -- I got the objection to the remand and I started to

19  look at it, and then I thought, "You know what, rather than

20  going back and looking at the complaint and going through

21  the docket and seeing -- looking at everything we've done

22  and develop an understanding, as to whether it makes sense

23  to keep staying the case, I'll just have a quick chat with

24  the lawyers, that will be easier."  But, the introductions

25  alone probably cost like $10,000 in your clients' time, so I

9

1   apologize.  I should have just taken the time myself to read

2   the -- go back and read the papers and figure out why this

3   case is not ready to be remanded.  I am sorry about that.

4       But, now that I have you, maybe you could explain it to

5   me a little more, because -- you know, I was reading the

6   objection and I -- you know, there was mention of -- there

7   was mention of federal officer removal.  And when I saw

8   that, I was like, "Hey, wait a minute.  I thought we already

9   had dealt with that in these other cases."

10      And then, there were a couple of other basis for

11  removal that were asserted that seemed totally frivolous to

12  me and I guess -- you know, on the one hand, if everybody is

13  okay with staying the case, I guess that's fine, but

14  generally I don't like staying cases unless there's a good

15  reason to.  And I'm not sure, from going through -- from

16  reading through the objection to remand, my take away was,

17  there doesn't seem like there -- there's any real basis for

18  thinking that -- you know, the Ninth Circuit is going to

19  rule that this case -- that a case like this shouldn't be

20  remanded; so what am I missing?

21      I mean, I guess the first question is -- maybe I should

22  start with the Plaintiffs and ask if you agree that the case

23  should -- should continue to be stayed.

24          MS. JONES:  Your Honor, Katie Jones for the

25  Plaintiff.  I'm happy to provide a brief overview of the

10

1  case, where we're at and why the Plaintiff is ready to move

2  forward with its motion to remand --

3          THE COURT:  Well, who -- who are the -- who's the

4  Plaintiff, first of all?

5          MS. JONES:  Sure.  This case is functionally, and

6  in substance, identical to the six cases the court sent back

7  to state court earlier this week.  The plaintiff here is

8  non-profit trade association, The Pacific Coast Federation

9  of Fishermen's Associations, and they represent commercial

10  of dungeness crab fishermen.  And so, the case alleges tort

11  claims against the fossil fuel company Defendants, based on

12  the Defendants' decades of failure to warn, and campaign of

13  deception, concerning the relationship between their

14  products and climate change.

15      And so, the Plaintiff here represents the dungeness

16  crab fishermen, whose livelihoods have been devastated by a

17  warming ocean, which caused growth of the toxic algae that

18  left crabs unsafe to eat.  And so, that's kind of the

19  factual and legal background.

20      And then, procedurally, the Defendants' grounds for

21  removal, as you pointed out, are identical, with one

22  exception, to the grounds rejected by this Court and by the

23  Ninth Circuit recently in three cases.  That's the San Mateo

24  County case, the City of Oakland case and the City and

25  County of Honolulu case.

1      And so, as to all of the removal issues addressed by

2  the Ninth Circuit there, the law in this circuit is now

3  settled and the U.S. Supreme Court, likewise, has recently

4  denied cert in the San Mateo and the Honolulu cases, and in

5  parallel cases from four other circuits, the first, third,

6  fourth and tenth.

7      And so, as to the only remaining issue of removal, the

8  Class Action Fairness Act, the Oakland appeal that's

9  currently before the Ninth Circuit can offer no guidance,

10  because that ground wasn't asserted there.  So, a further

11  stay, pending the outcome of the Oakland appeal, really

12  makes no sense at this juncture and will only delay

13  resolving the CAFA removal issue.

14      So, from the Plaintiffs' perspective, it's time to get

15  moving, and if the Court agrees, the parties will prepare a

16  briefing schedule for the motion to remand for the Court to

17  approve.

18          THE COURT:  Okay.  Mr. Dick?

19          MR. DICK:  Thank you, your Honor.  Defendants

20  submit that it would make sense and be more efficient to

21  continue the stay for just a short period of time and await

22  further guidance from the Ninth Circuit on these removal --

23          THE COURT:  Are those two things -- is -- are

24  those two things consistent, a short period of time and

25  await further guidance from the Ninth Circuit?

12

1       MR. DICK:  I believe so.  The Ninth Circuit appeal

2  will be -- the briefing will be completed next month on June

3  26th, so it's -- it's going to be ready for a decision very

4  soon.  So I don't think the stay would be -- should be too

5  long.  But importantly, the -- I disagree with my colleague,

6  Ms. Jones, in that the Ninth Circuit appeal will address

7  issues that are directly relevant to the removal issues here

8  and arguments that Defendants would make in an opposition to

9  remand at that -- at this point.

10      In particular, there is two arguments that are raised

11  on appeal in the Oakland case before the Ninth Circuit.  One

12  relates to the federal officer removal.  And while the Ninth

13  Circuit has rejected federal officer removal on certain

14  grounds, it has not addressed two key categories of evidence

15  that Defendants maintain gives rise to federal officer

16  removal.

17      The first being, Defendants' supply of specialized non-

18  commercial grade military fuels for the federal government,

19  under federal oversight and direction.  That category of

20  conduct has not yet been addressed by the Ninth Circuit and

21  is before the court in the Oakland appeal at this point.

22      Similarly, the Ninth Circuit has not yet addressed the

23  category of conduct relating to Defendants' substantial

24  activities for the federal government during the World War

25  II period, which again, defendants maintain, give rise to

13

1 federal officer removal.

2      So, if the briefing were to -- on the remand -- were to

3 continue -- start now, those are arguments that we would

4 make, knowing -- knowing that the Ninth Circuit is going to

5 address those issues soon.  And so, the Defendants maintain

6 it would make sense to await guidance on those issues before

7 proceeding.

8      Similarly, there's another argument related to <u>Grable</u>

9 jurisdiction that the Ninth Circuit has not yet addressed,

10 and that deals with whether or not <u>Grable</u> is appropriate

11 under the First Amendment.  As you know, as you stated --

12          THE COURT:  I mean, I read about that in the

13 objection.  I mean, that's not a -- that's not a serious

14 argument.

15          MR. DICK:  We maintain -- I mean, your Honor, as

16 you noticed, these cases have been proceeding for several

17 years, and over the course of that period Defendants'

18 theories and positions have changed somewhat, and it appears

19 now that they focus primarily on Defendants' speech and

20 their allegations are that Defendants' speech and alleged

21 misstatements are the focus of the claims.  Defendants

22 disagree --

23          THE COURT:  Why would that -- why would that -- I

24 don't understand that would give rise to federal

25 jurisdiction under <u>Grable</u>.  I mean, that just seems like --

14

1  it's almost like we're -- we're sitting in a room and we're

2  trying to think of any conceivable argument we can make in

3  support of a removal, no matter how funny it may be.

4          MR. DICK:  I -- I will, you know, acknowledge it's

5  a relatively new argument, but at the end of the day, to the

6  extent that Plaintiffs' claims are based and are targeting

7  Defendants' speech on national issues of importance, on

8  climate change, on climate policy, on energy sources, and

9  our position is that the First Amendment injects elements --

10  federal elements -- into those claims that require

11  Plaintiffs to prove certain things and puts a burden of

12  proof on them.  So there are elements of their claims --

13  federal elements -- and therefore, given that these are --

14  you know, there are federal elements in the claims, Grable

15  jurisdiction would be appropriate.  But again, that's going

16  to be an issue that the Ninth Circuit is going to address

17  head on in short order.

18          THE COURT:  That -- that issue is teed up for the

19  Ninth Circuit, as well in this --

20          MR. DICK:  Yes.

21          THE COURT:  -- in this Oakland appeal?  Is it the

22  Oakland one?

23          MR. DICK:  Yes, this is the Oakland appeal.

24      So there's the two issues.  It's the federal officer

25  removal on the -- on the grounds that I mentioned

1  previously, and the <u>Grable</u> First Amendment argument.  Those

2  are going to be before the court.  And, again, if we were to

3  move forward and brief remand now, those are arguments that

4  we would make.  That's evidence we would present, in terms

5  of the substantial supply of highly specialized non-

6  commercial grade fuels and the substantial activities

7  undertaken by Defendants during World War II.

8      And so, again, our position would be, you know, let's

9  wait a short period to see what the Ninth Circuit says on

10  those issues.  If Defendants prevail, you know, that likely

11  would be dispositive here and remand -- you know, briefing

12  wouldn't be necessary.  And, of course, if we don't prevail,

13  then we could avoid briefing those issues and kind of move

14  forward into the few remaining issues that would be live for

15  an opposition to remand in this case.

16          THE COURT:  What would be the few remaining issues

17  that would be live for an opposition?

18          MR. DICK:  So if -- I mean, as my colleague, Ms.

19  Jones stated, there is one removal of ground that has not

20  yet been addressed by this Court and --

21          THE COURT:  The CAFA one?

22          MR. DICK:  That's the CAFA.  And, just to respond,

23  I know -- you know, on first blush, your Honor, given your

24  experience in the other cases, you might think, "How could

25  this possibly be?"  But as Ms. Jones pointed out, this case

16

1  is different from the six other cases, and really all of the

2  other cases, that have been filed related to climate change

3  recently, in that this case is not brought by a municipality

4  or a state.  It is brought by a trade association that's

5  seeking to represent and seeking to pursue damages on behalf

6  of its members, which are probably hundreds, if not

7  thousands, we just don't know.  And, critically, they're

8  seeking to represent not just its own members.

9       If you look at their complaint, they are seeking to

10 represent the west coast fishing community, at large.  And

11 they're also seeking damages on behalf of commercial fishery

12 dependent communities along the entire west coast.

13 So this --

14            THE COURT:  Well that -- that actually does raise

15 an interesting question, right, because they -- you know,

16 they probably can't do that if they -- if they're not

17 pursuing a class action, right.

18      So -- so, I guess, what would the answer be at -- on a

19 motion to remand?  I mean, the answer might be, "Well you

20 can't do that.  That is not what this case actually is."

21 Right?  You're trying to make it a class action without it

22 being a class action and that's not what this case actually

23 is.  All this case is is an action on behalf of your members

24 -- let's say -- and that it's not a class action, but then

25 therefore there would not be removal under the Class Action

17

1 Fairness Act.

2     But actually -- but I get your point.  I didn't -- I

3 didn't understand that nuance about this -- about the claim.

4         MR. DICK:  And then, I would just also add, you

5 know, there are -- given the nature of these claims and the

6 different plaintiff, there are some added wrinkles here to

7 some of the removal grounds that have been rejected by the

8 Ninth Circuit already.

9     So, for example, as your Honor knows, Defendants have

10 removed under OCSLA, Outer Continental Shelf Lands Act, and

11 the Ninth Circuit found that the claims are too attenuated

12 to conduct on the Outer Continental Shelf, as I believe your

13 Honor did, as well.  Here, however, the focus of the claim

14 is on crab fishing, which the majority of which -- at least

15 a substantial portion, if not the majority -- occurs on the

16 outer continental shelf.  So, we would maintain there's a

17 much closer connection here in that regard, in terms of

18 activities on the outer continental shelf.

19         THE COURT:  Okay.  So, I guess the question for

20 Ms. Jones is, you know, this case has been sitting around

21 forever, and on the one hand, that's frustrating, but on the

22 other hand, the -- it does seem like there are some

23 complications in this case created by the possibility that

24 you're overreaching by trying to represent the entire west

25 coast fishing industry, or whatever, without it being a

18

1  class action.  What's the harm, under these circumstances,

2  of waiting?  Let's say it's a year.  Let's say it's one more

3  year, for the Ninth Circuit to decide the appeal out of --

4  involving the Oakland case?  I mean, in the grand scheme of

5  things, what's the harm?  I mean, there are other plaintiffs

6  who are being permitted to press ahead in state court

7  against these defendants, based on -- based on similar

8  allegations.

9          MS. JONES:  Your Honor, you've identified the

10 harm, which is continued delay to a case that has been

11 sitting around for more than four years since it was filed.

12 There's no countervailing likelihood of success that the

13 defendants can show.  The Ninth Circuit has shown repeatedly

14 that cases like this, and that deal with these same issues,

15 have been remanded.  The Supreme Court has denied cert, so

16 we're now in a position where we have the guidance we need

17 from the Ninth Circuit to move forward.

18         THE COURT:  So are -- so is everybody in agreement

19 that the only removal or remand issue that the Ninth

20 Circuit's ruling will not be dispositive of, is this CAFA

21 issue?  Is everybody in agreement about that?

22         MS. JONES:  That's the Plaintiffs' position.

23         THE COURT:  Mr. Dick?

24         MR. DICK:  I'm sorry -- the -- in terms of a

25 removal grounds, yes, that's the only ground that would not

19

1  be addressed by the Ninth Circuit after the Oakland

2  decision.  But, like I said, the --

3          THE COURT:  What about the outer continental shelf

4  thing?

5          MR. DICK:  That will -- the outer continental

6  shelf issue is not before the Ninth Circuit in the Oakland

7  appeal.  The two arguments in the Oakland appeal are, again,

8  the federal officer removal, which we think is an important

9  argument, and the Grable First Amendment argument.

10         THE COURT:  Okay.  But the other -- so other than

11 the outer continental shelf thing and -- and the CAFA thing,

12 you agree that everything else will be decided by the Ninth

13 Circuit?

14         MR. DICK:  I think that's likely fair.  Again,

15 some of these other grounds, given the uniqueness of this

16 case, may have some implications.

17     So, for example, federal law claims.  We would have to

18 take a look at whether or not the outer continental shelf

19 and the activities of the -- of the crab fishermen along the

20 entire west coast, as alleged in the complaint, may raise

21 some issues there.  But I think you've targeted the two key

22 ones, your Honor.

23         THE COURT:  So one -- you know, one option could

24 be to decide those issues while the Ninth Circuit is

25 deciding the other ones.  That could speed it up a little

20

1  bit, because it sounds like I would have to decide those

2  issues anyway, right?

3          MR. DICK:  That's true, your Honor.  I mean, I

4  would submit that after -- I'm fairly confident, given our

5  experience in these cases, that if we were to wait for the

6  Ninth Circuit decision to come out, we could brief remand

7  very quickly.  You know, 30 days for the Plaintiff to file

8  their motion.  We could file an opposition in 30 days, make

9  a reply in 14.  Something like that.  So, I think the amount

10 of time -- the savings we would get is probably not that

11 significant, if we were to set up a reasonable, efficient,

12 relatively short briefing schedule after the Ninth Circuit

13 decision comes out.

14         THE COURT:  All right.  Ms. Jones, what do you

15 think about that idea?  You probably don't like it either.

16         MS. JONES:  Yeah, it's our position that we can

17 move forward now.  If we're going to have to brief remand at

18 all, we may as well brief all of the issues that are in play

19 now.  The current stay goes through any supreme court

20 proceedings in the open case, and we'd submit here that

21 there is certainly no need to wait for any potential

22 decision.

23         THE COURT:  I don't think there's any -- I don't

24 think -- there's no chance that I'm going to allow that.

25 There's no -- I mean, after the Ninth Circuit rules, there's

21

1  no way that I'm allowing the case to be stayed longer than

2  that.

3        MR. DICK:  And that would be acceptable to the

4  Defendants, your Honor, I believe.

5        THE COURT:  Well I hope so, because I just said

6  there's no way I'm going to allow that.

7     Okay.  Let me -- let me give it a little more thought

8  and thank you all for joining us.

9        MR. DICK:  Thank you, your Honor.

10        MS. JONES:  Thank you, your Honor.

11        THE COURT:  Thank you.

12        ALL:  Thank you.

13     (Proceedings adjourned at 10:26 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

22

1                    <u>CERTIFICATE OF TRANSCRIBER</u>

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14                         

15

16

17         Echo Reporting, Inc., Transcriber

18              Thursday, June 8, 2023

19

20

21

22

23

24

25