VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
KATIE H. JONES (SBN 300913)
katie@sheredling.com
MARTIN D. QUIÑONES (SBN 293318)
marty@sheredling.com
TIMOTHY R. SLOANE (SBN 292864)
tim@sheredling.com
NAOMI WHEELER (SBN 342159)
naomi@sheredling.com
**SHER EDLING LLP**
100 Montgomery Street, Ste. 1410
San Francisco, CA 94104
Tel: (628) 231-2500
Fax: (628) 231-2929

*Attorneys for the Pacific Coast Federation*
*of Fishermen's Associations, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INC.;<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON CORP.; et al.,<br><br>Defendants. | Case No. 3:18-cv-07477<br><br>**NOTICE OF MOTION AND MOTION FOR REMAND**<br><br><br>Date: September 14, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince G. Chhabria |

## NOTICE OF MOTION AND MOTION TO REMAND

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1447(c), the stipulation of the parties, and the Court's June 23, 2023 Order (Dkt No. 219) setting a hearing for September 14, 2023, Plaintiff Pacific Coast Federation of Fishermen's Associations, Inc., hereby moves the Court for an Order remanding this matter to state court. Removal is improper because the Complaint does not raise any federal issues, and California Superior Court is the appropriate forum for these state-law claims. All but one of Defendants' bases for removal have already been rejected by the Ninth Circuit in similar cases. *See Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) ("*San Mateo IV*"), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty.*, 143 S. Ct. 1797 (Mem.) (2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 ("*Honolulu II*"), *cert. denied sub nom. Sunoco LP v. Honolulu*, 143 S. Ct. 1795 (Mem.) (2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ("*Oakland II*"), *cert. denied sub nom. Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (Mem.) (2021). Those decisions control here and require remand.

Each of Defendants' arguments for removal fail on the merits for the reasons expressed in *San Mateo IV*, *Honolulu II*, *Oakland II*, and similar cases decided across the country. Federal common law cannot provide an independent basis for removal jurisdiction; even if it could, the federal common law on which Defendants rely has been displaced by the Clean Air Act and "no longer exists." *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 937 (N.D. Cal. 2018) ("*San Mateo I*") (Chhabria, J.), *aff'd*, *San Mateo IV*, 32 F.4th 733. Nor does the case raise disputed, substantial questions of federal law sufficient to create federal question subject matter jurisdiction in this court. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). None of Plaintiff's claims are completely preempted by the Clean Air Act, any other federal statute, or the U.S. Constitution. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Neither is this case removable under 43 U.S.C. § 1349(b) since it does not "aris[e] out of, or in connection with . . . any operation conducted on the outer Continental Shelf." Nor is this case removable pursuant to 28 U.S.C. § 1442 because, among other reasons, Defendants did not act under

federal officers in any way relevant to this case and the tortious conduct alleged in the Complaint does not relate to anything Defendants have done under federal guidance, subjection, or control. Nor is the case removable on the ground that some of the alleged injuries arose, or alleged conduct occurred, on "federal enclaves." *See generally* U.S. CONST., art. I, § 8, cl. 17. None of Plaintiff's claims in fact arose within the federal enclave. Removal also is not authorized based on bankruptcy jurisdiction, *see* 28 U.S.C. §§ 1334(b) & 1452(a), because there is an "[in]sufficiently close nexus between [P]laintiff['s] lawsuit[] and" the one bankruptcy proceeding Defendants identify. *San Mateo I*, 294 F. Supp. 3d at 939; *see also San Mateo IV*, 32 F.4th at 762.

Defendants' new jurisdictional argument, invoking the Class Action Fairness Act ("CAFA"), fails because Plaintiff has neither asked to proceed on a class basis, alleged the elements required to establish a class, or sought class relief, omissions that are "fatal to CAFA jurisdiction." *See Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1040 (9th Cir. 2014).

Additionally, to the extent that Defendants intend to expand on arguments set forth in their Notice of Removal, as the Notice implies, *see* Dkt. No. 1 at 6:14 (stating that Defendants "will not be limited to the specific articulations in this Notice"), Plaintiff contends and moves that Defendants are limited to those bases articulated in the Notice. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."); *accord, e.g.*, *Colorado v. Symes*, 286 U.S. 510, 518–19 (1932) ("The burden is upon him who claims the removal plainly to set forth by petition . . . all the facts relating to the occurrence . . . on which the accusation is based.").

Finally, the Court should award Plaintiff "just costs and any actual expenses, including attorneys' fees," 28 U.S.C. § 1447(c), because Defendants "lacked an objectively reasonable basis for" removing this case. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

# TABLE OF CONTENTS

I.  INTRODUCTION................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...............................4

III. LEGAL STANDARD ...........................................................6

IV. ARGUMENT ....................................................................6

   A.  CAFA Does Not Provide a Basis to Remove This Case. ...........................7

   B.  Binding Ninth Circuit Precedent Forecloses Defendants' Remaining
      Removal Grounds, and Defendants Are Estopped from Asserting Them. ............10

     1.  The Court Should Estop Defendants from Asserting Their Remaining
        Arguments for Removal...................................................10

     2.  *Oakland II* and *San Mateo IV* Foreclose Removal Under Federal
        Common Law...........................................................11

     3.  *Oakland II* and *San Mateo IV* Foreclose Removal Under *Grable*. .........12

     4.  *Oakland II* and *San Mateo IV* Foreclose Removal via Complete
        Preemption. ..........................................................14

     5.  *San Mateo IV* and *Honolulu II* Foreclose Federal Officer Removal. .......15

     6.  *San Mateo IV* Forecloses Removal of PCFFA's Claims Under OCSLA. ...............16

     7.  There Is No Admiralty Jurisdiction, and Admiralty Jurisdiction Cannot
        Serve as a Ground for Removal. ........................................17

        a.  Admiralty Is Not a Basis for Removal.............................. 17

        b.  The Complaint Does Not Allege Any Injury on Navigable Water, or
            That a Vessel on Navigable Water Caused Any Injury on Land................... 21

        c.  The Tortious Conduct Giving Rise to Plaintiff's Claims Has No
            Substantial Relationship to Traditional Maritime Activity............................ 22

     8.  *San Mateo IV* and *Honolulu II* Foreclose Federal Enclave Removal. .......24

     9.  *San Mateo IV* Forecloses Bankruptcy Removal. ......................24

   C.  Plaintiff Is Entitled to Fees Spent Briefing Frivolous Removal Grounds. ............24

V.  CONCLUSION ...............................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*,
14 Cal. 4th 1247 (1997)..................................................................................... 9

*Addison Automatics, Inc. v. Hartford Casualty Insurance Co.*,
731 F.3d 740 (7th Cir. 2013) ......................................................................... 9, 10

*Airline Pilots Ass'n Int'l v. United Airlines, Inc.*,
223 Cal. App. 4th 706 (Ct. App. 2014) ............................................................. 9

*Alaska Marine Lines, Inc. v. Dunlap Towing Co.*,
No. 21-cv-842, 2021 WL 4976011 (W.D. Wash. Oct. 4, 2021) ....................... 20

*Ali v. Rogers*,
780 F.3d 1229 (9th Cir. 2015) .................................................................... 21, 22

*Am. Ins. Co. v. 356 Bales of Cotton*,
26 U.S. 511 (1828) ........................................................................................... 17

*Arias v. Superior Ct.*,
46 Cal. 4th 969 (2009)........................................................................................ 8

*Atherton v. F.D.I.C.*,
519 U.S. 213 (1997) ......................................................................................... 12

*Averill v. Fiandaca*,
No. 2:17-cv-00287-JDL, 2017 WL 4419242 (D. Me. Oct. 5, 2017) ............... 21

*Barglowski v. Nealco Int'l LLC*,
No. 16-cv-209, 2016 WL 5107043 (D. Haw. Sept. 20, 2016) ................... 19, 21

*Barker v. Hercules Offshore, Inc.*,
713 F.3d 208 (5th Cir. 2013)...................................................................... 20, 23

*Baumann v. Chase Inv. Servs. Corp.*,
747 F.3d 1117 (9th Cir. 2014)........................................................................... 7

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
405 F. Supp. 3d 947 (D. Colo. 2019) ........................................................... 1, 24

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
25 F.4th 1238 (10th Cir. 2022)..................................................... 1, 12, 14, 15

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.–E. v. Tenn. Gas Pipeline Co.*,
850 F.3d 714 (5th Cir. 2017)............................................................................. 13

*Belton v. Hertz Local Edition Transporting, Inc.*,
No. 19-CV-00854-WHO, 2019 WL 2085825 (N.D. Cal. May 13, 2019) ............... 8, 9

*Boudreaux v. Glob. Offshore Res., LLC*,
No. CIV.A. 14-2507, 2015 WL 4190025 (W.D. La. Jan. 30, 2015)........................ 21

*BP P.L.C. v Mayor & City Council of Baltimore*,
  141 S. Ct. 1532 (2021) ................................................................................................ 4

*Brown v. Porter*,
  149 F. Supp. 3d 963 (N.D. Ill. 2016)......................................................................... 20

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ............................................................................................... i, 14

*City & Cnty. of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022)............................................................................. *passim*

*City & Cnty. of Honolulu v. Sunoco LP*,
  Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021)............................... 1

*City of Annapolis v. BP P.L.C.*,
  Nos. 21-772, 21-1323, 2022 WL 4548226 (D. Md. Sept. 29, 2022) ........... 2, 6, 14, 16

*City of Hoboken v. Exxon Mobil Corp.*,
  558 F. Supp. 3d 191 (D.N.J. 2021)....................................................................... 2, 14

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022)................................................................... 12, 14, 15, 16

*City of Oakland v. BP P.L.C.*,
  Nos. C 17-06011 WHA, 2022 WL 14151421 (N.D. Cal. Oct. 24, 2022) ............. *passim*

*City of Oakland v. BP PLC*,
  969 F.3d 895 (9th Cir. 2020)............................................................................. *passim*

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022)............................................................................. *passim*

*Cnty. of San Mateo v. Chevron Corp.*,
  294 F. Supp. 3d 934 (N.D. Cal. 2018)................................................................ *passim*

*Colorado v. Symes*,
  286 U.S. 510 (1932) .................................................................................................. ii

*Connecticut v. Exxon Mobil Corp.*,
  No. 3:20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021)................................. 2, 14

*Coronel v. AK Victory*,
  1 F. Supp. 3d 1175 (W.D. Wash. 2014) ............................................................. 19, 21

*Delaware v. BP Am. Inc.*,
  578 F. Supp. 3d 618 (D. Del. 2022) .................................................................... 2, 14

*District of Columbia v. Exxon Mobil Corp.*,
  2022 WL 16901988 (D.D.C. Nov. 12, 2022)................................................................ 2

*Dirkse v. Nu Venture Diving Co.*,
  No. 17-cv-8554, 2018 WL 6133683 (C.D. Cal. May 21, 2018) ............................... 20

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 1994) .......................................................................................... 17

*Fields v. Halvorson*,
   No. C21-1591 RSM, 2022 WL 45337372 (W.D. Wash. Sept. 28, 2022) ................................. 21

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) .......................................................................................... 6

*Ghotra by Ghotra v. Bandila Shipping, Inc.*,
   113 F.3d 10504 (9th Cir. 1997) ...................................................................................... 18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) .................................................................................................. i, 3

*Gutierrez v. Flores*,
   543 F.3d 248 (5th Cir. 2008) ......................................................................................... 20

*Hagans v. Lavine*,
   415 U.S. 528 (1974) .................................................................................................. 11

*Harmston v. City & Cnty. of S.F.*,
   627 F.3d 1273 (9th Cir. 2010) ....................................................................................... 11

*Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*,
   761 F.3d 1027 (9th Cir. 2014) ................................................................................. ii, 2, 7

*Herb's Welding, Inc. v. Gray*,
   470 U.S. 414 (1985) .................................................................................................. 23

*Hoffman v. Sterling Jewelers, Inc.*,
   No. 18-CV-0696-BEN-WVG, 2018 WL 6830610 (S.D. Cal. Dec. 21, 2018) ............................. 9

*Hornish v. King Cnty.*,
   899 F.3d 680 (9th Cir. 2018) ......................................................................................... 13

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
   488 F.3d 112 (2d Cir. 2007) ........................................................................................... ii

*In re Mission Bay Jet Sports, LLC*,
   570 F.3d 1124 (9th Cir. 2009) ................................................................................... 21, 22

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995) .......................................................................................... 21, 22, 23

*Jet Aviation, Inc. v. City of Cleveland*,
   409 U.S. 249 (1972) .................................................................................................. 22

*Kidner v. P.F. Chang's China Bistro, Inc.*,
   No. EDCV 15-287 JGB KKX, 2015 WL 2453523 (C.D. Cal. May 21, 2015) ............................. 9

*Lu Junhong v. Boeing Co.*,
   792 F.3d 805 (7th Cir. 2015) ......................................................................................... 20

*Lussier v. Dollar Tree Stores, Inc.*,
    518 F.3d 1062 (9th Cir. 2008) ................................................................................. 25

*Madruga v. Superior Court*,
    346 U.S. 556 (1954) ................................................................................................ 18

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005) ....................................................................................... ii, 24, 25

*Massachusetts v. Exxon Mobil Corp.*,
    462 F. Supp. 3d 31 (D. Mass. 2020) ......................................................................... 1

*Matheson v. Progressive Specialty Ins. Co.*,
    319 F.3d 1089 (9th Cir. 2003) ................................................................................... 6

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    388 F. Supp. 3d 538 (D. Md. 2019) .......................................................................... 1

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ........................................................................... *passim*

*Minnesota v. Am. Petroleum Inst.*,
    63 F.4th 703 (8th Cir. 2023) ....................................................................... 12, 14, 15

*Minnesota v. Am. Petroleum Inst.*,
    No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ..................................... 1

*Moore v. Permanente Med. Grp., Inc.*,
    981 F.2d 443 (9th Cir. 1992) ................................................................................... 24

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) ................................................................................. 18

*Myhran v. Johns-Manville Corp.*,
    741 F.2d 1119 (9th Cir. 1984) ................................................................................. 24

*National Sea Clammers Assn. v. City of New York*,
    616 F.2d 1222 (2d Cir. 1980) .................................................................................. 23

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ..................................................................................... 6

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ................................................................................................ 10

*Pelagidis v. Future Care, Inc.*,
    No. 17-cv-3798, 2018 WL 2221838 (S.D. Tex. May 15, 2018) ............................... 20

*People v. ConAgra Grocery Prods. Co.*,
    17 Cal. App. 5th 51 (2017) ...................................................................................... 13

*Platkin v. Exxon Mobil Corp.*,
    No. 22-cv-06733 (RK) (JBD), 2023 WL 4086353 (D.N.J. June 20, 2023) ...................... 2, 6, 24

*Rhode Island v. Chevron Corp.*,
    393 F. Supp. 3d 142 (D.R.I. 2019) ....................................................................... 1, 18

*Rhode Island v. Shell Oil Prods. Co.*,
    35 F.4th 44 (1st Cir. 2022) ................................................................................ *passim*

*Romero v. Int'l Terminal Operating Co.*,
    358 U.S. 354 (1959) ................................................................................................. 18

*Ryan v. Hercules Offshore, Inc.*,
    945 F. Supp. 2d 772 (S.D. Tex. 2013) ..................................................................... 20

*Sanders v. Cambrian Consultants Am., Inc.*,
    132 F. Supp. 3d 853 (S.D. Tex. 2015) ..................................................................... 20

*Seven Seas Fish Mkt., Inc. v. Koch Gathering Sys., Inc.*,
    36 S.W.3d 683 (Tex. Ct. App. 2001) ....................................................................... 23

*Syverson v. Int'l Bus. Machines Corp.*,
    472 F.3d 1072 (9th Cir. 2007) ................................................................................. 11

*Tennessee Gas Pipeline v. Houston Casualty Insurance Co.*,
    87 F.3d 150 (5th Cir. 1996) ..................................................................................... 20

*Texaco Expl. & Prod., Inc. v. AmClyde Eng. Prod. Co.*,
    448 F.3d 760 (5th Cir. 2006) ................................................................................... 23

*Tobar v. United States*,
    639 F.3d 1191 (9th Cir. 2011) ................................................................................. 21

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
    899 F.2d 405 (5th Cir. 1990) ................................................................................... 17

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011) ..................................................................................... 7

**Statutes and Constitutional Provisions**

28 U.S.C. § 1291 ............................................................................................................. 11

28 U.S.C. § 1331 ........................................................................................................ 3, 17

28 U.S.C. § 1332 ......................................................................................................... 2, 7

28 U.S.C. § 1333 ..................................................................................................... 17, 19

28 U.S.C. § 1334(b) ......................................................................................................... ii

28 U.S.C. § 1441 ................................................................................ 3, 17, 18, 19, 20

28 U.S.C. § 1442 ................................................................................................. i, 3, 15

28 U.S.C. § 1447(c) ............................................................................................. i, ii, 24

28 U.S.C. § 1452(a) ....................................................................................................... ii, 3

43 U.S.C. § 1349(b) ............................................................................................. i, 3, 16

46 U.S.C. § 30101(a) ................................................................................................ 22

Cal. Civ. Proc. Code § 382 ........................................................................................ 8

Cal. Bus. & Prof. Code § 17200 ................................................................................ 8

U.S. Const. art. III, § 2, cl. 1 .................................................................................... 17

U.S. Const., art. I, § 8, cl. 17 ..................................................................................... ii

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 2, 7

Cal. R. Ct. 3.761 ...................................................................................................... 8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     Introduction**

This Court lacks subject-matter jurisdiction over these proceedings, and must remand the case to California Superior Court under binding Ninth Circuit precedent. The Ninth Circuit has already held in three separate opinions that federal jurisdiction does not exist over state-law claims like those asserted here by Plaintiff the Pacific Coast Federation of Fishermen's Associations, Inc. ("PCFFA" or "Plaintiff"), for harms caused by Defendants' tortious campaigns to deceive the public about the climate change impacts of their fossil fuel products. *See City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ("*Oakland II*"), *cert. denied sub nom. Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (Mem.) (2021); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) ("*San Mateo IV*"), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty.*, 143 S. Ct. 1797 (Mem.) (2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 ("*Honolulu II*"), *cert. denied sub nom. Sunoco LP v. Honolulu*, 143 S. Ct. 1795 (Mem.) (2023). Every court to consider Defendants' removal theories in similar climate-deception cases—fifteen district courts, including this Court, and six circuit courts of appeals—has granted or affirmed remand to state court.[1]

---

[1] *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*"), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"), *vacated and remanded on other grounds*, No. 20-884 (U.S. May 24, 2021), *aff'd, San Mateo IV*, 32 F.4th 733; *Cnty. of Santa Cruz v. Chevron Corp.*, 3:18-cv-00450-VC, Dkt. 142 (July 10, 2018) ("*Santa Cruz*"), *aff'd, San Mateo IV*, 32 F.4th 733; *Oakland II*, 969 F.3d 895; *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ("*Baltimore I*"), *as amended* (June 20, 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021), *aff'd*, 31 F.4th 178 (4th Cir. 2022) ("*Baltimore IV*"), *cert. denied sub nom. BP P.L.C. v. Mayor & City Council of Baltimore*, 143 S. Ct. 1795 (Mem.) (2023); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*"), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50 (1st Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021), *aff'd*, 35 F.4th 44 (1st Cir. 2022) ("*Rhode Island IV*"), *cert. denied sub nom. Shell Oil Prods. Co. v. Rhode Island*, 143 S. Ct. 1796 (Mem.) (2023); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder I*"), *aff'd*, 25 F.4th 1238 (10th Cir. 2022) ("*Boulder IV*"), *cert. denied sub nom. Suncor Energy, Inc. v. Bd. Comm'rs Boulder Cnty.*, 143 S. Ct. 1795 (Mem.) (2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cnty. of Honolulu v. Sunoco LP*, Nos. 20-163, 20-470, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ("*Honolulu I*"), *aff'd*, 39 F.4th 1101; *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ("*Minnesota I*"), *aff'd*,

1    After the Supreme Court denied certiorari review of unanimous opinions from the First,

2    Third, Fourth, Ninth, and Tenth Circuits affirming remand in similar cases, this Court indicated its

3    intention to remand this case to state court, "[a]bsent objection." *See* Dkt. 196. In their objection and

4    a subsequent case management conference, Defendants acknowledged that the Ninth Circuit has

5    already addressed all but one removal ground Defendants assert here. *See* Dkt. 197 at 3; Declaration

6    of Katie H. Jones ("Jones Decl.") at ¶ 3 & Ex. A, Transcript of Proceedings Held on May 26, 2023,

7    Dkt. 215 ("CMC Transcript"), at 15:18–22.

8    The only asserted basis for removal the Ninth Circuit has not already rejected—removal

9    under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)—is plainly meritless. Removal

10   under CAFA is only appropriate where "the action sought to be removed was *'filed under'* a state

11   statute 'similar' to [Fed. R. Civ. P.] 23," which means a plaintiff's "[f]ailure to request class status

12   or its equivalent is fatal to CAFA jurisdiction." *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761

13   F.3d 1027, 1040 (9th Cir. 2014) (quotation omitted) (emphasis added). The Complaint here does not

14   purport to proceed on a class basis or seek class relief, and is therefore not removable under CAFA.

15   Defendants' remaining removal grounds are foreclosed by binding Ninth Circuit precedent.

16   The Court should hold that Defendants are estopped from relitigating those issues, as they already

17   litigated and lost them in *San Mateo*. As this Court held in *San Mateo I*, the Ninth Circuit affirmed,

18   and every other circuit court to consider the issue has agreed, cases like this one do not "arise under"

19

20

21   63 F.4th 703 (8th Cir. 2023) ("*Minnesota II*"); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-1555,
     2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 9, 2021); *City*

22   *of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021) ("*Hoboken I*"), *aff'd sub nom.
     City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ("*Hoboken II*"), *cert. denied sub*

23   *nom. Chevron Corp. v. City of Hoboken*, __ S. Ct. __, 2023 WL 3440749 (Mem.) (May 15, 2023);
     *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken*, 45

24   F.4th 699; *City of Annapolis v. BP P.L.C.*, Nos. 21-772, 21-1323, 2022 WL 4548226 (D. Md. Sept.
     29, 2022), *appeal filed*, No. 22-2082 (4th Cir. Oct. 14, 2022); *City of Oakland v. BP P.L.C.*, Nos. C

25   17-06011 WHA, C 17-06012 WHA, 2022 WL 14151421, at *2–8 (N.D. Cal. Oct. 24, 2022)
     ("*Oakland III*"), *appeal filed*, No. 22-16810 (9th Cir. Nov. 25, 2022); *District of Columbia v. Exxon*

26   *Mobil Corp.*, __ F. Supp. 3d __, 2022 WL 16901988 (D.D.C. Nov. 12, 2022), *appeal filed*, No. 22-
     7163 (D.C. Cir. Nov. 30, 2022); *Platkin v. Exxon Mobil Corp.*, No. 22-cv-06733 (RK) (JBD), 2023

27   WL 4086353 (D.N.J. June 20, 2023) ("*New Jersey*"); *City of Charleston v. Brabham Oil Co.*, No.
     2:20-cv-03579, Dkt. 154 (D.S.C. July 5, 2023) ("*Charleston*") (Jones Decl. Ex. B).

28

1    federal common law for purposes of federal question jurisdiction. *See* 28 U.S.C. §§ 1331 & 1441.

2    The well-pleaded complaint rule prevents removal of state-law claims unless the narrow exception

3    articulated in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S.

4    308 (2005) ("*Grable*"), is satisfied, or the state-law claims are completely preempted by federal law.

5    *See San Mateo IV*, 32 F.4th at 746; *Oakland II*, 969 F.3d at 903–04. Here, as in *San Mateo* and

6    *Oakland*, neither exception applies. Plaintiff's claims do not necessarily require resolution of a

7    substantial federal question, and thus "d[o] not fit within the slim category *Grable* exemplifies."

8    *Oakland II*, 969 F.3d at 907 (quotation omitted); *accord San Mateo IV*, 32 F.4th at 747–48. Plaintiff's

9    claims cannot be completely preempted by the federal common law of interstate pollution nuisance

10   as Defendants contend because that common law has been displaced by statute and no longer exists.

11   *Baltimore IV*, 31 F.4th at 204–05; *San Mateo I*, 294 F. Supp. 3d at 937. Nor are claims completely

12   preempted by the Clean Air Act ("CAA"), which "is not one of the three statutes that the Supreme

13   Court has determined has extraordinary preemptive force" necessary to convert state-law claims into

14   federal ones. *San Mateo IV*, 32 F.4th at 748 (quoting *Oakland II*, 969 F.3d at 907).

15        The Ninth Circuit has repeatedly rejected Defendants' arguments under the federal officer

16   removal statute, 28 U.S.C. § 1442, based both on the grounds asserted in Defendants' Notice of

17   Removal ("NOR") here, *see San Mateo IV*, 32 F.4th at 758–60, and on the expanded evidentiary

18   record Defendants say they intend to present, *see Honolulu II*, 39 F.4th at 1108–10; *see also Oakland*

19   *III*, 2022 WL 11511421, at *6–8; CMC Transcript at 12:10–13:1. The Outer Continental Shelf Lands

20   Act ("OCSLA"), 43 U.S.C. § 1349(b), also does not confer jurisdiction because Plaintiff's claims—

21   like those remanded in *San Mateo*—do not relate to operations Defendants may engage in on the

22   Outer Continental Shelf ("OCS"). *See San Mateo IV*, 32 F.4th at 754. Removal is likewise improper

23   on admiralty grounds, both because admiralty cannot serve as the sole ground for removal and

24   because this case does not sound in admiralty. *See id.* at 763; *see also Santa Cruz*, Dkt. 142, at *1.

25   There is no jurisdiction under the federal enclave doctrine because "any connection between"

26   Plaintiff's injuries and any Defendant's conduct on federal enclaves are "too remote" to support

27   jurisdiction. *Honolulu II*, 39 F.4th at 1111–12; *see also San Mateo IV*, 32 F.4th at 749–50; *San Mateo*

28   *I*, 294 F. Supp. 3d at 939. Finally, there is no bankruptcy jurisdiction under 28 U.S.C. § 1452(a)

1    because "there is no sufficiently close nexus between [P]laintiff['s] lawsuit[] and" the one

2    bankruptcy proceeding Defendants identify. *San Mateo I*, 294 F. Supp. 3d at 939; *see also San Mateo*

3    *IV*, 32 F.4th at 762. Because Defendants raise no serious basis for federal removal, the Court should

4    remand and award Plaintiff fees and costs incurred briefing all removal grounds except for CAFA.

5    **II.    Factual and Procedural Background**

6         Plaintiff, the largest trade association of commercial fishermen on the West Coast, fights for

7    the long-term of survival of commercial fishing as a productive livelihood and way of life. *See*

8    Complaint, Dkt. 1-2 ("Compl."), ¶ 18. Plaintiff represents commercial Dungeness crab fishermen

9    and -women and their marketing associations, among other fishing communities. *Id.* Like other

10   climate-deception cases around the country, Plaintiff here "sue[s] various energy companies for

11   promoting fossil fuels while . . . concealing their environmental impacts"; the Complaint "center[s]

12   on the defendants' . . . failure to warn about the dangers of their products and the injuries . . . suffered

13   as a result." *BP P.L.C. v Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1535–36 (2021). The

14   complaint details Defendants' long-standing knowledge that the intended use of their fossil fuel

15   products causes climate change, Compl. ¶¶ 2, 6, 78–104; that Defendants invested heavily to protect

16   their assets from rising seas and worsening storms, *id.* ¶¶ 6, 143–48, but mounted a decades-long

17   campaign to spread disinformation about climate change, discredit the scientific consensus on global

18   warming, and deceive consumers about the link between their fossil fuel products and climate

19   change, all while promoting unabated use of those products, *id.* ¶¶ 7, 112–42; and that their campaign

20   proved successful, as it inflated demand for fossil fuels (along with Defendants' profits), thereby

21   significantly increasing greenhouse gas emissions and exacerbating the resulting climate-related

22   impacts of their conduct. *See, e.g.*, *id.* ¶¶ 2, 117, 163–66.

23        Climate change is significantly altering the world's oceans, including by increasing average

24   sea temperatures, worsening marine heatwaves, disturbing marine wildlife populations, and

25   exacerbating harmful algal blooms. *Id.* ¶¶ 1, 47–48, 56. Rising ocean temperatures in the eastern

26   Pacific Ocean and extreme marine heatwaves along the west coast of the United States have caused

27   massive blooms of the toxic algal group *Pseudo-nitzschia* in some of the most productive Dungeness

28   crab fishery grounds. *Id.* ¶¶ 8, 57–63. These blooms generate dangerous concentrations of the

1    neurotoxin domoic acid, which when ingested by humans can cause effects ranging from

2    gastrointestinal symptoms, to memory loss, to even death. *Id.* The propagation of domoic acid in the

3    marine food web has at times rendered crab flesh unfit for human consumption. *Id.* ¶¶ 9, 63. As a

4    result, state public health and fisheries authorities took the unprecedented step of closing significant

5    portions of the California and Oregon coasts to commercial Dungeness crab fishing in the 2015–16

6    and 2016–17 fishing seasons, along with the 2017–18 season for Oregon. *Id.* ¶¶ 10, 64, 169–70.

7        These fishery closures left commercial Dungeness crab fishermen and -women unable to

8    work. *Id.* ¶ 10. Crab harvesters, processors, and wholesalers suffered substantial economic losses

9    both from lost fishing opportunities and from depressed demand for crab products due to negative

10   stigma. *See id.* ¶¶ 10–11, 168, 172–76. PCFFA has diverted significant resources to addressing

11   domoic acid impacts on the commercial crab fishery, and the domoic acid-induced closures have

12   frustrated its mission of ensuring that commercial fishing remains a sustainable livelihood. *Id.* ¶ 20.

13       PCFFA filed this action in California Superior Court in November 2018, asserting claims for

14   nuisance, strict liability and negligent failure to warn, strict liability design defect, and negligence.

15   *Id.* ¶¶ 179–239. Plaintiff brings these claims in its own name for injuries it suffered as a result of the

16   domoic acid-induced crab fishery closures, and as an assignee of claims assigned to it by similarly

17   harmed individuals and businesses. *Id.* ¶ 19. Defendants removed, asserting nine grounds for

18   removal. *See generally* NOR, Dkt. 1. The parties stipulated to a stay pending resolution of appeals

19   before the Ninth Circuit in "similar actions." Dkt. 91 at 1–3. In January 2019, the Court approved

20   the stipulation and stayed the case. *Id.* at 10. As discussed in detail below, the Ninth Circuit has since

21   definitively rejected each of the removal grounds raised in those cases. *See San Mateo IV*, 32 F.4th

22   733; *Oakland II*, 969 F.3d 895; *Honolulu II*, 39 F.4th 1101. The Supreme Court has denied petitions

23   for certiorari from the *Oakland II*, *San Mateo IV*, and *Honolulu II* decisions.

24       Following the Supreme Court's denial of review in *San Mateo IV* and *Honolulu II*, this Court

25   issued an order stating that, "[a]bsent objection, [it] w[ould] remand this matter to state court." Dkt.

26   196. Defendants objected. *See* Dkt. 197. Defendants "acknowledge[d] that . . . the Ninth Circuit has

27   issued guidance on a number of the grounds for removal asserted in [their] Notice of Removal," but

28   identified one theory the Ninth Circuit has not already rejected: removal under CAFA. *Id.* at 3. On

1    May 26, 2023, the Court held a case management conference, Dkt. 204, at which the parties agreed

2    Defendants' CAFA removal theory is the only ground asserted here the Ninth Circuit has not yet

3    rejected in an analogous case. *See* CMC Transcript at 10:20–11:10, 15:18–22. Shortly after, the

4    Court lifted the stay and set a hearing on the instant Motion to Remand. Dkt. 203.

5    **III.    Legal Standard**

6           Federal courts are courts of limited jurisdiction, and "statutes extending federal jurisdiction

7    . . . are narrowly construed so as not to reach beyond the limits intended by Congress." *Oakland II*,

8    969 F.3d at 903. Removal statutes are "strictly construed against federal court jurisdiction." *Nevada*

9    *v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). Accordingly, "to justify removal . . . a

10   defendant must be able to show that the case being removed fits within one of a small handful of

11   small boxes." *San Mateo I*, 294 F. Supp. 3d at 939; *see also San Mateo IV*, 32 F.4th at 746. "Federal

12   jurisdiction must be rejected if there is any doubt as to the right of removal." *Gaus v. Miles, Inc.*,

13   980 F.2d 564, 566 (9th Cir. 1992); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d

14   1089, 1090 (9th Cir. 2003) (same).

15   **IV.    Argument**

16          All but one of the bases asserted in Defendants' NOR are foreclosed by Ninth Circuit

17   precedent in *Oakland II*, *San Mateo IV*, and *Honolulu II*, or are plainly meritless. *See* CMC

18   Transcript at 9:4–15:22, 18:18–19:22; *see also Santa Cruz*, 3:18-cv-00450-VC, Dkt. 142, at *1.

19   Accordingly, this Court need not reconsider those arguments,[2] and may simply address the only

20   removal ground asserted by Defendants here that the Ninth Circuit has yet to consider—removal

21   under CAFA. Removal under CAFA is unwarranted because Plaintiff's Complaint is not styled as a

22   class action and does not seek class treatment.

23

24   _____

25   [2] *See, e.g.*, *Charleston*, No. 2:20-cv-03579, Dkt. 154, at *5 ("This opinion only addresses these three
     new arguments [for removal] because the Fourth Circuit's opinion in *Baltimore IV* governs and
26   forecloses all other arguments presented by Defendants."); *Annapolis*, 2022 WL 4548226, at *4
     (similar); *New Jersey*, 2023 WL 4086353, at *3 (removal unwarranted because Third Circuit's
27   opinion in "*City of Hoboken* fatally forecloses each of Defendants' jurisdictional arguments"); *cf.*
     *Oakland III*, 2022 WL 14151421, at *2–8 (granting remand "in light of this lineup of appellate
28   authority," including *Oakland II*, *San Mateo IV*, and *Honolulu II*).

Because Defendants have refused to withdraw any grounds for removal asserted in their NOR despite Ninth Circuit precedent clearly foreclosing those arguments, the Court should grant Plaintiff attorneys' fees and costs incurred in briefing those additional, foreclosed removal grounds.

### A.    CAFA Does Not Provide a Basis to Remove This Case.

Defendants' argument that this case is removable under CAFA is untested in an analogous case, but is ultimately frivolous. Plaintiff did not file this case under Fed. R. Civ. P. ("FRCP") 23 or any state procedural rule that would permit class treatment. Plaintiff has not asked to proceed on a class basis or alleged the elements necessary to establish a class. "Failure to request class status or its equivalent is fatal to CAFA jurisdiction" in general and is fatal to removal here. *See Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1040 (9th Cir. 2014) ("*Louie*").

Under CAFA, district courts have "original jurisdiction over 'a class action' if the class has more than 100 members, the amount in controversy is greater than $5,000,000, and the parties are minimally diverse." *Id.* at 1039 (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). The statute defines a "class action" as "any civil action filed under rule 23 of the [FRCP] or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). "A state statute or rule is 'similar' to Rule 23 if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials," which permit class certification only if the enumerated requirements for numerosity, commonality, typicality, and adequate representation are satisfied. *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) (quoting *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011); *see* Fed. R. Civ. P. 23(a). Because CAFA's class action definition encompasses only cases "'*filed under*' Rule 23 or a state law equivalent, . . . [t]he appropriate inquiry is therefore whether a complaint *seeks* class status." *Louie*, 761 F.3d at 1040 (emphasis added).

This is not a class action. Plaintiff has not sought class treatment or alleged that the elements of Rule 23 or any California equivalent are satisfied. The Complaint does not plead the existence of a class or define the limits of a class, invoke any class procedure under California law, seek class damages, or even use the word "class-action" except in a quotation from another document describing a hypothetical response to a hypothetical weather event. *See* Compl. ¶ 109. Defendants'

NOR does not identify any California class statute or procedural rule that the case is purportedly "filed under." The Complaint doesn't either—to the contrary, the California Rules of Court require that "[a] complaint for or against a class party must include in the caption the designation 'CLASS ACTION,'" and "must contain a separate heading entitled 'CLASS ACTION ALLEGATIONS,' under which the plaintiff describes how the requirements for class certification are met," and neither appear in the Complaint. *See* Cal. R. Ct. 3.761; *see also* Cal. Civ. Proc. Code § 382 (defining elements of class action). Plaintiff represented in response to one of the questions on the Civil Case Cover Sheet filed with the Complaint: "This case is not a class action." *See* Dkt. 1-2 at 3. Defendants themselves agree that "Plaintiff does not characterize its action as a class action." NOR ¶ 11. Because this case was not styled as a class action and does not purport to satisfy the requirements for a class action, it is not one for purposes of CAFA removal.

Judge Orrick's decision granting remand in *Belton v. Hertz Local Edition Transporting, Inc.*, No. 19-CV-00854-WHO, 2019 WL 2085825 (N.D. Cal. May 13, 2019), is on point and instructive. A plaintiff there brought claims against his employer for alleged overtime pay and rest break violations, including claims under California Business and Professions Code § 17200 *et seq.* and "the California Private Attorneys General Act ('PAGA') for penalties on behalf of himself and all other 'aggrieved employees.'" *Id.* at *1. The defendant removed, arguing that under California Supreme Court precedent, "a private party may pursue a representative action under Section 17200 only if the party 'complies with Section 382 of the Code of Civil procedure,' [meaning that] such an action must meet the requirements for a class action." *Id.* at *4 (cleaned up) (citing *Arias v. Superior Ct.*, 46 Cal. 4th 969, 980 (2009)). The court emphasized that the plaintiff "d[id] not seek class status, plead the existence of a class, define the limits of a class, or even reference the word class in his complaint," and that "[t]he civil cover sheet affirmatively checks the box stating that this case is not a class action suit." *Id.* at *3. "[A]s master of his complaint," the court held, the plaintiff's "decision not to request class status or its equivalent [wa]s fatal to CAFA jurisdiction." *Id.* at *3. The court found that the defendant's argument that the plaintiff would be required to certify a class to recover damages on behalf of absent coworkers "put[] the cart before the horse" because "the fact that a plaintiff's complaint seeks damages only technically available in a class action does not somehow

1  transform the complaint into a class action complaint." *Id.* at *4 (quoting *Hoffman v. Sterling*

2  *Jewelers, Inc.*, No. 18-CV-0696-BEN-WVG, 2018 WL 6830610, at *3 (S.D. Cal. Dec. 21, 2018));

3  *see also Kidner v. P.F. Chang's China Bistro, Inc.*, No. EDCV 15-287 JGB KKX, 2015 WL

4  2453523, at *4 (C.D. Cal. May 21, 2015) ("[A]sserting class action type damages in the Complaint

5  is not the same as bringing a class action complaint."). The same analysis applies here: Because the

6  Complaint does not seek class treatment or reference a state class procedure, it is not a class action.

7       Defendants' argument that this case "is in substance a class action under California law,"

8  NOR ¶ 11, presents merits arguments that have repeatedly been rejected in this Circuit as a basis for

9  jurisdiction. Defendants say "California courts recognize that a trade association generally lacks

10 standing to pursue damages on behalf of its members," and "to the extent a 'trade association' is

11 allowed to recover on behalf of its members, it can do so only by 'representing . . . a class' of

12 persons." NOR ¶ 86 (quoting *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247,

13 1257 (1997), and citing *Airline Pilots Ass'n Int'l v. United Airlines, Inc.*, 223 Cal. App. 4th 706, 726

14 (Ct. App. 2014)). That is irrelevant, because the Complaint does not seek to "recover on behalf of"

15 Plaintiff's members. The Complaint repeatedly and exclusively asserts that "*Plaintiff* sustained and

16 will continue to sustain the injuries and damages set forth in this Complaint, including, but not

17 limited to, economic losses due to commercial fishery closures," including through claims assigned

18 to it, and "*Plaintiff* is entitled to recover damages and other appropriate relief" individually, not on

19 behalf of a class. *See, e.g.*, Compl. ¶¶ 214, 216 (emphases added); *see also id.* at 90 ("Prayer for

20 Relief" seeking compensatory and punitive damages and other relief, not mentioning class injuries

21 or remedies). Even assuming Defendants' interpretation of the law and the Complaint were correct,

22 moreover, "[t]he proper method for [a defendant] to attack [a plaintiff's] seemingly improper

23 allegations concerning class action type damages is a motion to dismiss or strike in state court."

24 *Kidner*, 2015 WL 2453523, at *5. An asserted deficiency under state law is not a basis for federal

25 subject-matter jurisdiction and does not provide one here.

26       *Addison Automatics, Inc. v. Hartford Casualty Insurance Co.*, cited by Defendants, is plainly

27 distinguishable and only highlights why CAFA removal is improper here. *See* 731 F.3d 740 (7th Cir.

28 2013); NOR ¶ 86. The plaintiff there originally brought claims in state court alleging a manufacturer

1   defendant "sent thousands of 'junk faxes' in violation of the federal Telephone Consumer Protection

2   Act" and state law. *Id.* at 741. The manufacturer's insurers refused to pay the cost of defending the

3   suit, and "[l]eft to its own devices and checkbook," the manufacturer negotiated a settlement

4   whereby the parties would ask the state court to certify a class and enter judgment against the

5   manufacturer, and the manufacturer would then assign to the class plaintiff any claims it might hold

6   against the insurers that refused to defend the suit. *Id.* However, "[t]he settlement made clear that

7   [the plaintiff's] status as assignee depended on its continuing role as class representative," and the

8   claims were assigned to the class, not to the plaintiff individually. *Id.* The plaintiff eventually sued

9   an insurer in a complaint "describ[ing] the suit as 'an individual declaratory judgment action,' and

10  insist[ing] that it [wa]s 'not a class action.'" *Id.* at 742. The insurer nonetheless removed on CAFA

11  grounds. The Seventh Circuit held that the plaintiff's disclaimers could not defeat removal, because

12  "the terms of the class settlement approved in state court ma[d]e clear that [the plaintiff] ha[d]

13  standing to pursue relief from [the insurer] only in its capacity as class representative," and "in

14  pursuing this action against [the insurer], [the plaintiff] owe[d] continuing fiduciary obligations to

15  the class it represent[ed]." *Id.* at 742, 743. Despite its "coy pleading," the plaintiff could not avoid

16  the binding class settlement that both limited its ability to pursue relief and imposed duties on both

17  the plaintiff and the court to protect the interests of the class, and the case was therefore removable

18  under CAFA. *Id.* at 745. None of those considerations arise here. No class has been certified, and no

19  settlement or other agreement limits Plaintiff's ability to bring these claims in its own name.

20          In sum, CAFA does not provide a basis to remove this case to federal court.

21  **B.      Binding Ninth Circuit Precedent Forecloses Defendants' Remaining
22           Removal Grounds, and Defendants Are Estopped from Asserting Them.**

23          **1. The Court Should Estop Defendants from Asserting Their Remaining
                Arguments for Removal.**

24          As detailed below, *San Mateo IV* forecloses all of Defendants' remaining removal theories.

25  They should not be permitted to relitigate issues they have already lost before the Ninth Circuit.

26          Offensive collateral estoppel permits "a plaintiff [to seek] to estop a defendant from

27  relitigating the issues which the defendant previously litigated and lost against another plaintiff."

28  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). Each of the requirements for applying

this form of issue preclusion is satisfied here. *First*, all but one Defendant is a defendant in *San Mateo*. The sole exception, ExxonMobil Oil Corporation, is a "wholly-owned subsidiary of" Exxon Mobil Corporation that acts on the latter's behalf and subject to its control. Compl. ¶ 24(c). Given that Exxon Mobil Corporation is a party to both cases, and ExxonMobil Oil Corporation is a subsidiary controlled by Exxon Mobil Corporation, the Court should find that ExxonMobil Oil Corporation is sufficiently "in privity with a party to the prior action" to bind it to *San Mateo IV*'s holdings. *See Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007). *Second*, Defendants unquestionably had "a full and fair opportunity to litigate" the identical asserted removal grounds in *San Mateo* before this Court and the Ninth Circuit, and *third*, they took full advantage of that opportunity. *See id. Fourth*, these removal grounds were "decided in a final judgment" for purposes of issue preclusion, *see id.*, because the Ninth Circuit affirmed this Court's remand order and the Supreme Court denied certiorari. *See Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273, 1278 (9th Cir. 2010) (remand orders are "final for purposes of [28 U.S.C.] § 1291").

Defendants should not be given yet another bite at the apple. The Court should hold that Defendants are collaterally estopped from reasserting their foreclosed removal theories.

### 2. *Oakland II* and *San Mateo IV* Foreclose Removal Under Federal Common Law.

Defendants first contend that this case is removable because Plaintiff's claims arise under federal common law. NOR ¶¶ 15–28. The Ninth Circuit has explained that where, as here, a complaint asserts solely state-law claims, the well-pleaded complaint rule prohibits removal on the basis of federal-question jurisdiction unless one of the rule's narrow exceptions applies, namely the *Grable* or complete preemption doctrines. *See San Mateo IV*, 32 F.4th at 746; *Oakland II*, 969 F.3d at 903–04. As described below, *infra* Part IV.B.3, *Grable* does not apply here. Nor are Plaintiff's claims completely preempted by the federal common law of transboundary air or water pollution, as Defendants contend, NOR ¶¶ 15–23, because that common law has been displaced by the CAA and Clean Water Act, such that "it is 'no longer open to discussion' that [such] federal common law claims even exist to govern [Plaintiff's] claims." *Baltimore IV*, 31 F.4th at 206 (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)). This case "should not have been removed to federal court on the

basis of federal common law that no longer exists." *San Mateo I*, 294 F. Supp. 3d at 937. For that reason, the Ninth Circuit and every other circuit court of appeals to consider Defendants' novel theory of federal common law removal have rejected it. *See San Mateo IV*, 32 F.4th at 746–48; *Rhode Island IV*, 35 F.4th at 53–57; *Hoboken II*, 45 F.4th at 707–09; *Baltimore IV*, 31 F.4th at 200–08; *Minnesota II*, 63 F.4th at 709–12; *Boulder IV*, 25 F.4th at 1257–62. The Supreme Court has denied certiorari review in each case where a petition has been filed to date.

Defendants' argument that these claims are removable "because they implicate the management of a federal resource," NOR ¶¶ 24–28, does not alter this result. Defendants say that Dungeness crabs qualify as a federal natural resource to the extent they exist on the OCS and insist that, accordingly, "claims alleging harms to that federal resource must be governed by federal common law." *Id.* ¶ 28. Even assuming Defendants were correct that Plaintiff's members harvest crabs in part from the OCS—despite no allegations to that effect in the Complaint—"Defendants never point to [a] specific cause of action under federal common law" that could subsume Plaintiff's claims. *Baltimore IV*, 31 F.4th at 199. Unlike their assertions about the now "defunct" federal common law of public nuisance regarding interstate pollution, *id.* at 206, Defendants do not even rest their secondary argument on a once-extant body of federal common law that formerly governed claims regarding federal natural resources. And even assuming Plaintiff's claims involve federal natural resources and implicate "'uniquely federal interests,' Defendants' request for federal common law still fails because they do not satisfy the necessary 'precondition' of creating federal common law—the recognition of a significant conflict between a federal interest and state law's application." *Id.* at 202 (quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997)). Ultimately, as in every other analogous case, "Defendants have failed to show that federal common law truly controls this dispute involving their fossil-fuel products and misinformation campaign." *Id.* at 208.

### 3. *Oakland II* and *San Mateo IV* Foreclose Removal Under *Grable*.

Next, Defendants urge that Plaintiff's state-law claims are removable under the *Grable* doctrine. NOR ¶¶ 29–43. But as this Court explained in *San Mateo I*, simply "gestur[ing] to federal law and federal concerns in a generalized way" is insufficient to warrant removal under *Grable*. 294 F. Supp. 3d at 938. The Ninth Circuit agreed, reaffirming in *San Mateo IV* that,

1

2

3

as in *Oakland*, even if the complaints raise federal policy issues that are national and international in scope, implicate foreign affairs and negotiations with other nations, and require uniform standards, they do not "raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331."

4    32 F.4th at 748 (quoting *Oakland II*, 969 F.3d at 907). The same result obtains here.

5         For that reason, even assuming Plaintiff's claims implicate policy issues surrounding federal

6    natural resources, Defendants have not shown—and cannot show—that Plaintiff's state-law claims

7    will require resolution of a substantial issue of federal law. *See* NOR ¶¶ 40–41. Defendants provide

8    no example of a case removed to federal court under *Grable* merely because state-law claims might

9    touch upon natural resources that are in part regulated by the federal government. The only cases

10   Defendants cite in support of this argument found federal-question jurisdiction under *Grable* because

11   those complaints explicitly relied on federal law and would require a court to interpret federal law.

12   *See Hornish v. King Cnty.*, 899 F.3d 680, 689–91 (9th Cir. 2018) (finding jurisdiction over claim

13   seeking a declaration of rights "necessarily implicat[ing]" the federal National Trails System Act

14   Amendments of 1983 and that relied on allegations regarding the federal Act's grant of authority to

15   preserve certain rights-of-way); *Bd. of Comm'rs of Se. La. Flood Prot. Auth.–E. v. Tenn. Gas*

16   *Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017) (noting that the plaintiff's "complaint dr[ew] on

17   federal law as the *exclusive basis* for holding Defendants liable" for certain actions and reasoning

18   that "[t]he absence of any state law grounding for the duty that the Board would need to establish

19   for the Defendants to be liable means that that duty would have to be drawn from federal law"

20   (emphasis added)). Here, by contrast, the Complaint seeks to hold Defendants liable under well-

21   established California tort law for Defendants' affirmative promotion of their fossil fuel products

22   while concealing their knowledge of those products' climate-related hazards from the public. *See,*

23   *e.g.*, *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 91–92 (2017).

24        At the May 26, 2023 case management conference, Defendants indicated they intend to raise

25   a new theory of *Grable* jurisdiction premised on their own First Amendment defenses, *see* CMC

26   Transcript at 13:8–14:15, although their NOR only vaguely mentions a First Amendment theory in

27   passing in a single sentence, *see* NOR ¶ 39. This argument can be easily disposed of, too, because

28   the well-pleaded complaint rule precludes removal of state-law claims based on a federal defense,

1   "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that

2   the federal defense is the only question truly at issue." *Oakland II*, 969 F.3d at 904 (quoting

3   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). The Third Circuit and every district court

4   to consider Defendants' novel and baseless First Amendment theory of *Grable* jurisdiction—

5   including another court in this District—have dismissed it out of hand, and this Court should too.

6   *See Hoboken II*, 45 F.4th at 709; *Oakland III*, 2022 WL 14151421, at *5–6; *Hoboken I*, 558 F. Supp.

7   3d at 203–05; *Delaware*, 578 F. Supp. 3d at 632–34; *Connecticut*, 2021 WL 2389739, at *10;

8   *Annapolis*, 2022 WL 4548226, at *9–10; *Charleston*, No. 2:20-cv-03579, Dkt. 154, at *10. There is

9   "no clear reason to deviate from the clear weight of authority" rejecting this removal theory.

10   *Charleston*, No. 2:20-cv-03579, Dkt. 154, at *10.

11          Simply put, claims like Plaintiff's "do not fit within the slim category *Grable* exemplifies."

12   *Oakland II*, 969 F.3d at 907 (cleaned up); *accord San Mateo IV*, 32 F.4th at 747–48.[3]

13                 **4.  *Oakland II* and *San Mateo IV* Foreclose Removal via Complete Preemption.**

14          Defendants inaccurately contend that this case is removable because Plaintiff's claims are

15   completely preempted by federal law—specifically, the CAA. *See* NOR ¶¶ 54–66. The Ninth Circuit

16   has repeatedly rejected similar complete preemption removal arguments: "The Clean Air Act is not

17   one of the three statutes that the Supreme Court has determined has extraordinary preemptive force"

18   sufficient to convert state law claims into federal claims for jurisdictional purposes, and does not

19   satisfy the recognized requirements for complete preemption. *San Mateo IV*, 32 F.4th at 748 (quoting

20   *Oakland II*, 969 F.3d at 907); *see also Oakland II*, 969 F.3d at 906 ("[C]omplete preemption for

21   purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-

22   law cause of action, and (2) provided a substitute cause of action."). Quite the contrary. Rather than

23   expressing congressional intent to preempt state-law claims, the CAA contains a "savings clause[]

24   that preserve[s] state causes of action." *San Mateo I*, 294 F. Supp. 3d at 938; *Oakland II*, 969 F.3d

25   at 907–08. Because Defendants "do not identify any other federal statute that completely preempts

26

27   _____

28   [3] *See also, e.g.*, *Rhode Island IV*, 35 F.4th at 56–57; *Hoboken II*, 45 F.4th at 708–09; *Baltimore IV*, 31 F.4th at 208–15; *Minnesota II*, 63 F.4th at 711–12; *Boulder IV*, 25 F.4th at 1265–71.

1    the state-law claims here . . . , the complete preemption exception to the well-pleaded complaint rule

2    does not apply." *San Mateo IV*, 32 F.4th at 748.

3              **5.  *San Mateo IV* and *Honolulu II* Foreclose Federal Officer Removal.**

4              The Ninth Circuit has repeatedly rejected Defendants' federal officer removal arguments,

5    NOR ¶¶ 67–75, as have the First, Third, Fourth, Eighth, and Tenth Circuits. *See San Mateo IV*, 32

6    F.4th at 757–60; *Honolulu II*, 39 F.4th at 1107–10; *see also Oakland III*, 2022 WL 14151421, at *6–

7    8.[4] As detailed below, these decisions foreclose federal officer removal here.

8              Defendants still cannot satisfy any of the requirements of federal officer removal. First, the

9    Ninth Circuit has concluded twice that Defendants' (or their predecessors') asserted acts of

10   producing fossil fuels on the OCS or at the Elk Hills Petroleum Reserve, and their "arm's-length

11   business relationship to supply NEXCOM with generally available commercial products," do not

12   show they acted under federal officers within the meaning of 28 U.S.C. § 1442. *San Mateo IV*,

13   32 F.4th at 758; *accord Honolulu II*, 39 F.4th at 1107–10. Second, Defendants cannot demonstrate

14   the required causal nexus between their purported federal conduct and Plaintiff's claims, which

15   target Defendants' "coordinated, multi-front effort to conceal and deny their own knowledge of [the

16   catastrophic climate-related] threats [caused by use of their fossil fuel products], discredit the

17   growing body of publicly available scientific evidence," and mislead consumers and the public.

18   Compl. ¶ 2. *See, e.g.*, *Baltimore IV*, 31 F.4th at 234 ("[T]he relationship between Baltimore's claims

19   and any federal authority over a portion of certain Defendants' production and sale of fossil-fuel

20   products is too tenuous to support removal under § 1442."); *Minnesota II*, 63 F.4th at 714–16

21   (similar). And third, Defendants' paltry attempt at raising colorable federal defenses, NOR ¶ 75, fails

22   for the reasons set forth in *Honolulu II*. Among other flaws, Defendants cannot satisfy their burden

23   by "simply assert[ing] a defense and the word 'colorable' in the same sentence." *Honolulu II*, 39

24   F.4th at 1110 (quotation omitted).

25

26

27   _____

28   [4] *Accord Rhode Island IV*, 35 F.4th at 53 n.6; *Hoboken II*, 45 F.4th at 712–13; *Baltimore IV*, 31 F.4th at 228–38; *Minnesota II*, 63 F.4th at 714–16; *Boulder IV*, 25 F.4th at 1250–54.

1     To the extent Defendants intend to present new evidence in support of federal officer removal

2 with their opposition brief, *see* CMC Transcript at 12:10–13:1, that evidence changes nothing. *See*

3 *Oakland III*, 2022 WL 14151421, at *6–8 (concluding defendants' additional evidence did not show

4 they acted under federal officers in light of *San Mateo IV* and *Honolulu II*); *Hoboken II*, 45 F.4th at

5 713 (rejecting defendants' new theories of federal officer jurisdiction); *Annapolis*, 2022 WL

6 4548226, at *5–8 (finding insufficient causal nexus under *Baltimore IV* between defendants' new

7 evidence and plaintiff's claims); *Charleston*, No. 2:20-cv-03579, Dkt. 154, at *8–9 (same).

8              **6.  *San Mateo IV* Forecloses Removal of PCFFA's Claims Under OCSLA.**

9     OCSLA grants federal courts jurisdiction over cases "arising out of, or in connection" with

10 certain operations involving mineral development (*i.e.*, oil and gas production) on the OCS.

11 43 U.S.C. § 1349(b)(1). In *San Mateo IV*, as here, Defendants asserted that the plaintiffs' claims

12 arose in connection with OCS operations because "a portion of" their total global fossil fuel

13 "extraction took place on the [OCS]." 32 F.4th at 754; *see* NOR ¶¶ 76–82. The Ninth Circuit

14 disagreed, both because the plaintiffs' "injuries occurr[ed] exclusively within their local

15 jurisdictions" and because their "claims focus[ed] on the defective nature of [Defendants'] fossil

16 fuel products, [their] knowledge and awareness of the harmful effects of those products, and their

17 'concerted campaign' to prevent the public from recognizing those dangers"—none of which

18 "refer[red] to actions taken on the [OCS]." *San Mateo IV*, 32 F.4th at 754–55. The public entities'

19 "tort claims [therefore did not] 'aris[e] out of, or in connection with' [Defendants'] operations on

20 the [OCS] for purposes of jurisdiction under § 1349(b)(1)." *Id.* at 755.

21     That analysis is dispositive. Like the *San Mateo* plaintiffs, PCFFA seeks relief for injuries

22 occurring outside the OCS. *See* Compl. ¶¶ 1, 8, 10. And, once again as in *San Mateo*, PCFFA's

23 claims center on Defendants' "know[ledge] for nearly a half century that unrestricted pollution and

24 use of their fossil fuel products create[s] greenhouse gas pollution that warms the planet, changes

25 our climate, and disrupts the oceans," and Defendants' extensive efforts to hide and misrepresent

26 that knowledge. *See* Compl. ¶ 2. The conduct giving rise to Plaintiff's claims does not constitute an

27 "operation" on the OCS within the meaning of § 1349(b). *See San Mateo IV*, 32 F.4th at 754–55. It

28 is therefore immaterial whether Plaintiff's claims will impact future oil and gas production on the

shelf. *See* NOR ¶¶ 78–79; *cf. United Offshore Co. v. S. Deepwater Pipeline Co.,* 899 F.2d 405, 407 (5th Cir. 1990) (finding federal jurisdiction under OCSLA where dispute arose between two operators of a pipeline transporting natural gas from the OCS); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 565 (5th Cir. 1994) (dispute among joint owners of offshore facilities seeking partition of said interests). Because Plaintiff's claims in no way arise out of or connect with operations on the OCS, OCSLA does not provide federal jurisdiction here.

### 7.   There Is No Admiralty Jurisdiction, and Admiralty Jurisdiction Cannot Serve as a Ground for Removal.

Nor is removal proper based on admiralty. The Constitution bestows federal courts original—but not exclusive—jurisdiction over admiralty and maritime claims. *See* U.S. CONST. art. III, § 2, cl. 1. Under the admiralty jurisdiction statute's "saving to suitors" clause, however, a plaintiff maintains the right to have state law admiralty claims heard in state court. *See* 28 U.S.C. § 1333(1). This case is not removable on admiralty grounds both because it does not sound in admiralty and because, even if it did, "maritime claims brought in state court are not removable to federal court absent an independent jurisdictional basis." *San Mateo IV*, 32 F.4th at 763.

#### a.   Admiralty Is Not a Basis for Removal.

The Court need not consider whether this case sounds in admiralty because, even if it did, removal on that basis would still not be available under 28 U.S.C. §§ 1333 and 1441. The Constitution extends the federal judicial power to "all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2, cl. 1. For purposes of the federal courts' statutory subject matter jurisdiction, however, courts have recognized that "[a] case in admiralty does not, in fact, arise under the Constitution or laws of the United States" because such cases "are as old as navigation itself." *Am. Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 545–46 (1828) (Marshall, C.J.); *compare* 28 U.S.C. § 1331 (granting district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"). Congress has thus separately granted the district courts "original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. But the original jurisdiction conferred by § 1333 "is 'exclusive' only as

to those maritime causes of action begun and carried on as proceedings in rem, . . . where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." *Madruga v. Superior Court*, 346 U.S. 556, 560 (1954). The statute's "saving to suitors" clause "leave[s] state courts competent to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person," notwithstanding the district courts' concurrent original jurisdiction. *Id.* (quotation omitted). The clause codifies "the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal." *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 371 (1959); *see also id.* at 372 ("The role of the States in the development of maritime law is a role whose significance is rooted in the Judiciary Act of 1789 and the decisions of this Court.").

Because the state and federal courts share jurisdiction over *in personam* admiralty cases, "maritime claims brought in state court are not removable to federal court absent an independent jurisdictional basis." *San Mateo IV*, 32 F.4th at 763; *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001); *Rhode Island I*, 393 F. Supp. 3d at 152. Courts have in turn resisted interpretations of jurisdictional statutes that would render "saving-clause actions . . . freely removable under § 1441." *Romero*, 358 U.S. at 371–72. "Therefore, a plaintiff with in personam maritime claims has three choices: He may file suit in federal court under the federal court's admiralty jurisdiction, in federal court under diversity jurisdiction if the parties are diverse and the amount in controversy is satisfied, or in state court." *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997).

Defendants here are named *in personam*, and Defendants do not contend this case should or must proceed *in rem*. Plaintiff filed its Complaint in California state court, and all the claims alleged arise under California common law. *See* Compl. ¶¶ 179–239 (causes of action). This case thus necessarily comes within the saving-to-suitors clause and is not removable solely on admiralty grounds. *See San Mateo IV*, 32 F.4th at 763. This Court in 2018 granted motions to remand and rejected admiralty jurisdiction for this same reason in a group of substantially similar cases against many of the same Defendants named here, and the Ninth Circuit affirmed. *See Santa Cruz*, 3:18-cv-00450-VC, Dkt. 142, *aff'd*, *San Mateo IV*, 32 F.4th at 745, 763. Plaintiff here, like the plaintiffs in

1   *Santa Cruz*, exercised its congressionally protected right to file state law claims in state court. The

2   Court's analysis can end there, and admiralty jurisdiction is again absent.

3       Defendants contend that the saving-to-suitors clause does not bar removal, and instead

4   merely "preserves to Plaintiff all *remedies* it otherwise has, while requiring it to *pursue* those

5   remedies in a federal forum," apparently relying on amendments made to 28 U.S.C. § 1441, the

6   general removal statute, in 2011. NOR ¶ 52. That argument is wrong, and this Court implicitly

7   rejected it in *Santa Cruz*, where it granted remand in part "for the reasons stated in *Coronel v. AK*

8   *Victory*, 1 F. Supp. 3d 1175, 1178–89 (W.D. Wash. 2014)." *Santa Cruz*, No. 18-cv-00450-VC, Dkt.

9   142, at *1. The defendants in *Coronel* argued that because the general removal statute's wording

10  was amended in 2011 to permit removal of "any civil action brought in a State court of which the

11  district courts . . . have original jurisdiction," 28 U.S.C. § 1441(a), district courts "must implement

12  the plain language of the new version of the removal statute strictly" and accept removal of maritime

13  cases where they would have original jurisdiction, "even if doing so contravenes traditional maritime

14  practices." *Coronel*, 1 F. Supp. 3d at 1179. The court surveyed the statutory and constitutional

15  history of admiralty jurisdiction, *see id.* at 1181–87, and found that "throughout the history of federal

16  admiralty jurisdiction . . . courts have given no indication that maritime claims are cognizable" at

17  law in federal court "absent subject matter jurisdiction independent of 28 U.S.C. § 1333," *id.* at 1187.

18  The court therefore declined to give the amendments to § 1441 a reading that "would vitiate the

19  saving to suitors clause" in § 1333, "interfere with the balance of judicial power between federal and

20  state courts upheld" in Supreme Court precedent, and "deprive the plaintiff of his long-recognized

21  choice of remedies, including, potentially, his right to a jury trial," which would be unavailable in

22  federal court. *Id.* at 1188 & n.12. The procedural circumstances here are identical to *Coronel* and

23  *Santa Cruz*, and so is the result: Admiralty cannot serve as an independent basis for removal.[5]

24

25  [5] The Ninth Circuit in *San Mateo IV* did not consider Defendants' arguments based on the § 1441

26  amendments because they found the issue waived. *See San Mateo IV*, 32 F.4th at 764 n.25.
    Nonetheless, every district court in this Circuit that has considered the issue, including the court in

27  *Coronel* and this Court in *Santa Cruz*, has held that the amendments did not alter the traditional non-
    removability of maritime claims. *See Barglowski v. Nealco Int'l LLC*, No. 16-cv-209, 2016 WL

28

1    The cases Defendants cite to argue that the 2011 amendments redrew the boundaries of

2    admiralty jurisdiction do not support them. For example, *Tennessee Gas Pipeline v. Houston*

3    *Casualty Insurance Co.*, 87 F.3d 150 (5th Cir. 1996), did not turn on an interpretation of the savings-

4    to-suitors clause or the amendments to § 1441 because, unlike here, OCSLA provided a separate

5    ground for removal. *Id.* at 155–56. In any event, the Fifth Circuit has since reinforced the traditional

6    rule that maritime claims filed in state court "are exempt from removal by the 'saving-to-suitors'

7    clause . . . and therefore may only be removed when original jurisdiction is based on another

8    jurisdictional grant, such as diversity of citizenship." *Barker v. Hercules Offshore, Inc.*, 713 F.3d

9    208, 219 (5th Cir. 2013).[6] The Seventh Circuit in *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 817–18

10   (7th Cir. 2015), flagged the issue of maritime removability after the § 1441 amendments but declined

11   to reach it because the plaintiffs waived any saving-to-suitors argument. *See also Brown v. Porter*,

12   149 F. Supp. 3d 963, 970–72 (N.D. Ill. 2016) (rejecting *Lu Junhong*'s position as dicta and holding

13   that the saving-to-suitors clause barred removal). The vast majority of courts, meanwhile, including

14   every court to have considered the question in the Ninth Circuit and most in the Fifth Circuit, have

---

16   5107043, at *8 (D. Haw. Sept. 20, 2016) ("The Court agrees with the other district courts in the
     Ninth Circuit, and concludes that, even considering the 2011 amendments to § 1441, common law
17   maritime claims are not removable . . . absent separate grounds for jurisdiction."); *Dirkse v. Nu*
     *Venture Diving Co.*, No. 17-cv-8554, 2018 WL 6133683, at *6 (C.D. Cal. May 21, 2018) ("[T]here
18   is not a persuasive basis to interpret the 2011 Amendment as one that changed the longstanding rules
     first established by *Romero*."); *Alaska Marine Lines, Inc. v. Dunlap Towing Co.*, No. 21-cv-842,
19   2021 WL 4976011, at *3 (W.D. Wash. Oct. 4, 2021) ("[C]onsiderations of history and policy
     surrounding the existing maritime jurisdiction [should] be followed until Congress clearly says
20   otherwise.").

21   [6] A handful of district courts in the Fifth Circuit have held that the 2011 amendments to § 1441 now
22   authorize removal of *in personam* maritime claims, *see Ryan v. Hercules Offshore, Inc.*, 945 F. Supp.
     2d 772, 778 (S.D. Tex. 2013), but those cases' validity is, at best, in doubt. The court that authored
23   *Ryan* has since determined based on developing case law and commentary that maritime cases
     cannot be removed absent an independent basis for jurisdiction. *See Sanders v. Cambrian*
24   *Consultants Am., Inc.*, 132 F. Supp. 3d 853, 858 (S.D. Tex. 2015). Other courts that at first followed
     *Ryan* have also reversed course. *See Pelagidis v. Future Care, Inc.*, No. 17-cv-3798, 2018 WL
25   2221838, at *7–8 (S.D. Tex. May 15, 2018) ("As more courts and scholars have considered the
26   issue, *Ryan* has become a minority position. While the law is still unclear, the trend against *Ryan*, the
     valid questions that many courts raise as to its reasoning outside its narrow facts, and the mandate
27   to strictly construe the removal statute and resolve 'any doubt as to the propriety of removal . . . in
     favor of remand,' mean that removal based on the general maritime-law claims cannot stand."
28   (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008))).

---

1    affirmed the longstanding rule that *in personam* maritime cases are not removable. *See, e.g.*, *Averill*

2    *v. Fiandaca*, No. 2:17-cv-00287-JDL, 2017 WL 4419242, at *3 (D. Me. Oct. 5, 2017) (granting

3    remand because "the saving-to-suitors clause permits Plaintiff to elect to pursue state law remedies

4    in state court"); *Boudreaux v. Glob. Offshore Res., LLC*, No. CIV.A. 14-2507, 2015 WL 419002, at

5    *3–5 (W.D. La. Jan. 30, 2015) (collecting cases and siding with majority view that savings clause

6    cases are still not removable); *Coronel*, 1 F. Supp. 3d at 1187; *Barglowski*, 2016 WL 5107043, at

7    *8; *Fields v. Halvorson*, No. C21-1591 RSM, 2022 WL 4533737, at *2 (W.D. Wash. Sept. 28, 2022)

8    (granting remand where defendant "did not demonstrate an independent ground for federal

9    jurisdiction"). The rule is the same today as it has been for decades—admiralty jurisdiction is not a

10   basis for removal.

11

                 ***b.   The Complaint Does Not Allege Any Injury on Navigable Water, or That a Vessel on Navigable Water Caused Any Injury on Land.***

12

13          If the Court does reach the issue on the merits, removal would still be inappropriate because

14   Plaintiff's claims do not sound in admiralty. A tort cause of action comes within Article III's

15   admiralty clause when it satisfies both the "location" and "connection with maritime activity" tests.

16   *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see In re*

17   *Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009). The location test requires a

18   showing that the alleged tort occurred on navigable water, or that an injury suffered on land was

19   caused by a vessel on navigable water. *See Grubart*, 513 U.S. at 534 (citing 46 U.S.C. app. § 740);

20   *Ali v. Rogers*, 780 F.3d 1229, 1235 (9th Cir. 2015). The location of a tort for admiralty jurisdiction

21   purposes is "where the injury occurs." *Tobar v. United States*, 639 F.3d 1191, 1197 (9th Cir. 2011)

22   (quotation omitted).

23          Defendants mischaracterize the relevant injury here as harm to the ecological health of the

24   Dungeness crab fishery, occurring at sea. NOR ¶ 46. But that is not the injury alleged in the

25   Complaint. Rather, *Plaintiff* suffered "severe hardships" because of Defendants' conduct and the

26   regulatory fisheries closures that conduct caused. Compl. ¶¶ 1, 8, 11, 182, 184. More precisely,

27   ecological harm rendered the Dungeness crab population inedible and prompted the fishery closures,

28   which in turn prevented the fleet from "unt[ying] their boats or deploy[ing] their crab traps until

1    crabs became safe to consume," stranding the vessels and fishermen and -women onshore when they

2    otherwise could have been fishing. *Id*. ¶ 10. It was therefore on land, where the financial

3    consequences of the closures were felt, that Plaintiff's injuries occurred.

4        A tort occurring on land falls within admiralty jurisdiction only if the "instrumentality" of

5    that injury was a vessel. 46 U.S.C. § 30101(a). Despite Defendants' arguments, the production of

6    some unspecified amount of fossil fuels by "mobile offshore drilling units" ("MODUs") does not

7    transform Plaintiff's state-law tort claims into claims under federal admiralty law. NOR ¶ 47. First,

8    Defendants do not contend that their MODUs are used for navigational purposes, but rather only for

9    oil and gas extraction, a "fatal . . . characterization of Defendants' floating rigs and platforms as

10   vessels for admiralty jurisdiction." *Baltimore IV*, 31 F.4th at 227; *see* NOR ¶ 47. Furthermore, the

11   Complaint alleges that Plaintiff's injuries arise from the defective nature of Defendants' products

12   and from Defendants' promotion of those products, not from oil and gas extraction by MODUs.

13               ***c.   The Tortious Conduct Giving Rise to Plaintiff's Claims Has No***
                 ***Substantial Relationship to Traditional Maritime Activity.***
14

15       Defendants also fail to satisfy the maritime connection test because the activity giving rise

16   to the incident does not bear a "substantial relationship to traditional maritime activity." *Grubart*,

17   513 U.S. at 534 (quotation omitted). The key inquiry is "whether a tortfeasor's activity, commercial

18   or noncommercial, on navigable waters is so closely related to activity traditionally subject to

19   admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."

20   *Id.* at 539–40. The "law of admiralty has evolved over many centuries, designed and molded to

21   handle problems of vessels," such as navigational rules, seaworthiness of ships, maritime liens, cargo

22   damage, and salvage. *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 269 (1972). In the

23   tort context, the Ninth Circuit "look[s] at a tort claim's general features, rather than at its minute

24   particulars, to assess whether there is the requisite connection" to traditional maritime activity. *Ali*,

25   780 F.3d at 1235; *see In re Mission Bay Jet Sports*, 570 F.3d at 1126–27 (same).

26       Here, the tortious conduct that caused the domoic acid-induced fishery closures, and

27   Plaintiff's resulting injuries, is Defendants' *deceptive promotion and marketing* of their fossil fuel

28   products while concealing and failing to warn of those products' climate-related hazards. These are

1   land-based activities. *See Baltimore IV*, 31 F.4th at 226 ("While Baltimore alleges 'sea level rise' as

2   one of the many sources of its injuries, the actual torts involving Baltimore's property have occurred

3   on land as opposed to navigable waters."). None of Defendants' tortious activities challenged here

4   relate to any "traditional maritime activity." *See, e.g.*, *Seven Seas Fish Mkt., Inc. v. Koch Gathering*

5   *Sys., Inc.*, 36 S.W.3d 683, 687 (Tex. Ct. App. 2001) (holding that the transportation of oil across

6   land is not related to traditional maritime activity in oil spill litigation). Defendants cite several cases,

7   such as *National Sea Clammers Assn. v. City of New York*, 616 F.2d 1222 (2d Cir. 1980), which

8   suggest that the activity of the injured rather than the injurer is what determines the maritime

9   character of the suit. These cases, however, were decided prior to *Grubart*, which clarified that "the

10  nature of the plaintiff's activity is irrelevant to the substantial relationship component of the maritime

11  nexus test." *Seven Seas*, 36 S.W.3d at 687 (citing *Grubart*, 513 U.S. at 541). Instead, the dispositive

12  inquiry is whether "the incident originated in the maritime *activity of a tortfeasor*." *Grubart*, 513

13  U.S. at 541 (emphasis added). Here, Defendants' tortious deceptive marketing and promotion of

14  their fossil fuel products, along with their efforts to spread disinformation and discredit established

15  climate change science, simply cannot be characterized as maritime activities.

16      Notwithstanding that this case challenges Defendants' tortious promotion and failures to

17  warn, their oil and gas production—even from MODUs—is not a traditional maritime activity

18  anyway. In *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 425 (1985), the Supreme Court concluded

19  that the "exploration and development of the Continental Shelf are not themselves maritime

20  commerce." Although *Herb's Welding* involved a fixed drilling platform, courts have extended its

21  reasoning to torts arising on "vessels" engaged in oil and gas production, focusing on whether the

22  specific injurious activity was related to a traditional subject of admiralty law—*e.g.*, navigation.[7]

23      Finally, even if some of Defendants' activities qualified as "traditional maritime activities,"

24  they are not alleged to be a proximate cause of Plaintiff's injuries. *Grubart*, 513 U.S. at 541. As

25

26  _____

    [7] *See Texaco Expl. & Prod., Inc. v. AmClyde Eng. Prod. Co.*, 448 F.3d 760, 771 (5th Cir. 2006)
    (claims involving accident on vessel constructing a drilling platform did not arise from "traditionally
27  maritime activities"); *Barker*, 713 F.3d at 218 (in personal injury case on MODU, "the act which
    gave rise to the incident in question—in this case, replacing a casing over a well—was in furtherance
28  of the non-maritime activity of offshore oil exploration and drilling." (Clement, J., concurring)).

explained above, the conduct at issue is Defendants' faulty design and deceptive promotion of their fossil fuel products, which is not related to maritime activity, *see Baltimore IV*, 31 F.4th at 226, and does "not require the special expertise of a court in admiralty as to navigation or water-based commerce," *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1122 (9th Cir. 1984).

### 8.  *San Mateo IV* and *Honolulu II* Foreclose Federal Enclave Removal.

The Ninth Circuit has also rejected Defendants' assertion of federal enclave jurisdiction, NOR ¶¶ 91–94, as has every other court to consider it. *See San Mateo IV*, 32 F.4th at 750 ("The connection between conduct on federal enclaves and the [plaintiffs'] alleged injuries is too attenuated and remote to establish that the [plaintiffs'] cause of action is governed by the federal law applicable to any federal enclave."); *Honolulu II*, 39 F.4th at 1111 (rejecting federal enclave jurisdiction where "any connection between" defendants' conduct on federal enclaves "and the plaintiffs' alleged injuries was too remote"); *see also New Jersey*, 2023 WL 4086353, at *3 & n.2 (describing defendants' federal enclave jurisdictional argument as "meritless" and "futil[e]" in light of its uniform rejection by federal circuit courts). "[D]efendants' [identical] arguments for federal enclave jurisdiction [here] must [similarly] fail." *Oakland III*, 2022 WL 14151421, at *4–5 (rejecting federal enclave removal in light of *San Mateo IV* and *Honolulu II*).

### 9.  *San Mateo IV* Forecloses Bankruptcy Removal.

Last, Defendants' attempt to remove under the bankruptcy removal statute, NOR ¶¶ 95–98, has also been rejected by the Ninth Circuit and every other court to consider it. *See San Mateo IV*, 32 F.4th at 762; *Baltimore IV*, 31 F.4th at 223; *Rhode Island IV*, 35 F.4th at 62; *Boulder I*, 405 F. Supp. 3d at 980. It is equally meritless here.

### C.  Plaintiff Is Entitled to Fees Spent Briefing Frivolous Removal Grounds.

Defendants' continued assertion of removal grounds clearly foreclosed by Ninth Circuit precedent is frivolous, and the Court should award Plaintiff "just costs and any actual expenses, including attorney fees" spent briefing them. 28 U.S.C. § 1447(c). Section 1447(c)'s fee-shifting provision aims "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). "[B]ad faith need not be demonstrated." *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 448 (9th Cir. 1992).

1        As the Court noted at the May 26, 2023 case management conference, several of Defendants'

2   removal grounds are now "frivolous" in light of *Oakland II*, *San Mateo IV*, and *Honolulu II*. *See*

3   CMC Transcript at 9:10–12. Defendants likewise acknowledged that the Ninth Circuit has resolved

4   all but their CAFA theory of removal. *See id.* at 15:18–22. In light of that precedent, Plaintiff's

5   counsel asked defense counsel in early June if Defendants would withdraw any of the nine removal

6   grounds originally asserted in the NOR. *See* Jones Decl. ¶ 2. Defendants refused to withdraw any,

7   *see id.*, leaving Plaintiff no choice but to brief each of these removal arguments here. Defendants'

8   insistence on wasting Plaintiff's—and the Court's—time with baseless removal arguments under

9   CAFA and frivolous removal arguments that the Ninth Circuit has repeatedly rejected warrants an

10  award of attorneys' fees and costs. Because Defendants "lacked an objectively reasonable basis for"

11  pursuing their removal theories, *Martin*, 546 U.S. at 141, and "the relevant case law clearly

12  foreclosed" all removal grounds other than CAFA at the time Plaintiff requested that Defendants

13  withdraw them, *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008), an award

14  of fees and costs is warranted.[8]

15  **V.       Conclusion**

16          The Court should remand this case to state court, where it was filed and where it belongs.

17  The Court also should award Plaintiff fees spent briefing Defendants' frivolous removal grounds.

18

19      Dated:  July 18, 2023                        **SHER EDLING LLP**

20

21                                       By:    */s/ Victor M. Sher*_____

22                                              VICTOR M. SHER
                                                MATTHEW K. EDLING

23                                              KATIE H. JONES
                                                MARTIN D. QUIÑONES

24                                              TIMOTHY R. SLOANE
                                                NAOMI D. WHEELER

25                                              **SHER EDLING LLP**
                                                100 Montgomery Street, Ste. 1410

26

27  _____
    [8] Plaintiff is prepared to submit a declaration and detailed accounting of the fees and costs it has
28  incurred briefing Defendants' asserted removal grounds aside from CAFA removal, and those it will
    incur on reply should Defendants continue to press these issues in their opposition brief.

San Francisco, CA 94104
Tel: (628) 231-2500
Fax: (628) 231-2929
Emails: vic@sheredling.com
        matt@sheredling.com
        katie@sheredling.com
        marty@sheredling.com
        tim@sheredling.com
        naomi@sheredling.com

*Attorneys for Pacific Coast Federation of
Fishermen's Associations Inc.*